STATE *ex rel.* ELMER COMBS

*v.*

OTTO C. BOLES, *Warden,*

WEST VIRGINIA PENITENTIARY

(No. 12579)

Submitted October 4, 1966. Decided November 15, 1966.

*Stephen G. Young,* for relator.

*C. Donald Robertson,* Attorney General, *George H. Mitchell,* Assistant Attorney General, for respondent.

CAPLAN, PRESIDENT:

In this original habeas corpus proceeding the petitioner, Elmer Combs, seeks a writ to compel the respondent, Otto C. Boles, Warden of the West Virginia

Penitentiary, to release him from custody. The writ was granted on June 13, 1966, returnable on September 7, 1966, and counsel was appointed to represent the petitioner. On the return day the petitioner, through his counsel, appeared and filed his written motion for leave to amend the petition. The motion was granted and the case was continued to October 4, 1966. The Attorney General, appearing for the respondent, filed a return and demurrer to the amended petition. Counsel for the parties filed a stipulation wherein it was agreed that the exhibits filed with the respondent's return are true and that certified copies thereof should be considered as evidence by this Court. On October 4, 1966, the case was submitted for decision upon the aforesaid pleadings, the exhibits filed therewith and upon the arguments and briefs of counsel.

It is revealed by the record that on January 8, 1962, Elmer Combs was indicted by the grand jury attending the Circuit Court of Logan County, West Virginia, for the slaying of one Robert Huffman. The indictment was in the following words: "* * * that Elmer Combs on the 1st day of November, 1961, in the said County of Logan, feloniously and unlawfully did kill and slay one Robert Huffman, against the peace and dignity of the State. * * *". It appears in the record of this proceeding that two additional felony indictments were returned against the petitioner by the same grand jury, but such indictments are not material to the issues presented in the consideration of this case.

The petitioner was subsequently arraigned and entered pleas of guilty to all three indictments. However, the court, noting that Elmer Combs did not have counsel, refused to accept the pleas and appointed counsel to represent him. On January 23, 1962, the petitioner was again arraigned on the same charges. In the colloquy between the court and the then defendant the court referred to the indictment, a portion of which is quoted above, as an indictment for murder. The judge informed the defendant that he could be sentenced to

death as a result of his guilty plea to the indictment, thereby indicating that the charge of murder was contained therein. In reply to the court's inquiry as to his guilt or innocence the petitioner said: "I want to say that I am guilty; guilty as charged."

On the same day the Prosecuting Attorney of Logan County filed an information alleging that the petitioner had been convicted of two prior felonies. Thereupon the court read the information to the then defendant and asked him if it had been explained by his counsel and if he understood it. Mr. Combs replied: "I don't understand that part." The court then inquired of the petitioner if he was the same Elmer Combs mentioned in the information. Before the petitioner was permitted to answer, however, the court fully informed him that he could refuse to answer or he could deny that he was the same person, and in either event a jury would be impaneled to make a determination of that question; or he could admit to being the same Elmer Combs. Mr. Combs said he did not want a trial on that issue and admitted that he was the same Elmer Combs mentioned in the information. During this time petitioner was represented by counsel.

Thereupon the court sentenced the petitioner on his plea of "guilty as charged" to confinement in the penitentiary "for the rest of his natural life". On the same day, by a separate order, the court, by reason of the information and the petitioner's reply thereto, imposed a life sentence upon the petitioner and specified that such sentence shall run concurrently with the one imposed on the petitioner's guilty plea to the principal offense. As a result of these sentences the petitioner is presently in the custody of the warden of the West Virginia Penitentiary.

There are two principal grounds of relief upon which the petitioner relies. He contends that the language in the indictment under which he was convicted and sentenced to life imprisonment is insufficient to sup-

port a charge of murder; that in view of such language the charge could be no greater than voluntary manslaughter; and that the sentence imposed thereunder is therefore void and of no force and effect. His second ground of relief relates to the procedure pertaining to his sentence as a recidivist. The petitioner alleges that he was not duly cautioned in accordance with the provisions of Code, 1931, 61-11-19, as amended.

The petitioner shot and killed his uncle, after which he ladened his body with rocks and cast it into a well. For this crime the State charged by indictment that the petitioner "feloniously and unlawfully did kill and slay one Robert Huffman". This is the indictment under which the trial court sentenced the petitioner to life imprisonment upon the plea, "guilty as charged".

It has long been recognized by this Court and by the Courts of other jurisdictions that malice is an indispensable element of the crime of murder. This was succinctly stated by the Court in *State v. Jones,* 128 W. Va. 496, 37 S. E. 2d 103, as follows: "Malice, express or implied, is an essential element of murder in the second degree, and if absent the homicide is of no higher grade than voluntary manslaughter." In clear and unequivocal language Point 1 of the Syllabus of *State v. Bowyer,* 143 W. Va. 302, 101 S. E. 2d 243, says: "Malice express or implied is an essential element of murder of the first or second degree." See also *State v. Morris,* 142 W. Va. 303, 95 S. E. 2d 401; *State v. Roush,* 95 W. Va. 132, 120 S. E. 304; *State v. Galford,* 87 W. Va. 358, 105 S. E. 237; *State v. Panetta,* 85 W. Va. 212, 101 S. E. 360; *Scott v. Commonwealth,* 143 Va. 510, 129 S. E. 360; and *Thomas v. Commonwealth,* 186 Va. 131, 41 S. E. 2d 476.

After defining first and second degree murder, it is said in Code, 1931, 61-2-1, that it is not necessary to set out the manner or means by which the homicide was caused. That code section then continues: "* * *

but it shall be sufficient in every such indictment to charge that the defendant did feloniously, wilfully, maliciously, deliberately and unlawfully slay, kill and murder the deceased.'' Considering further statutory provisions, it is worthy of note that the suggested form of a murder indictment includes the words ''wilfully, maliciously, deliberately'' Code, 1931, 62-9-3. Furthermore, the indictment in the case at bar is in the exact language as that contained in the statutory form for an indictment for voluntary manslaughter. Code, 1931, 62-9-4.

While an indictment does not have to be in the exact form as that suggested by statute, it is imperative, in order to lawfully charge an accused with a certain crime, that the essential elements of that crime be alleged. Homicide is the killing of any human creature, but every homicide is not murder. Under the common law, and now by statute, homicide is divided into murder and manslaughter. In order to constitute murder the killing must be done with malice. The homicide, if committed feloniously and unlawfully, but without malice, will constitute voluntary manslaughter.

In the instant case the indictment failed to accuse the petitioner of the crime of murder. The absence of the allegation of malice necessarily reduces the accusation to a degree of homicide no greater than voluntary manslaughter. Therefore, when he entered his plea ''guilty as charged'', he could not have admitted guilt to a charge any greater than that of which he was accused. Consequently, under the plea to the subject indictment, the petitioner could be convicted of and sentenced for a degree of homicide no greater than voluntary manslaughter, the sentence for which is confinement in the penitentiary not less than one nor more than five years. Code, 1931, 61-2-4.

Although the trial court treated this indictment as one for murder and imposed a sentence accordingly, both of which considerations were erroneous, render-

ing the sentence unenforceable, the petitioner is not exonerated from his crime. His admission of guilt to the valid charge remains and he is subject to the sentence prescribed for that offense. A plea of guilty is an admission of whatever is well charged in the indictment. It admits the criminating facts alleged and the statutory elements of the offense charged. 5 M.J., Criminal Procedure, § 33. As well stated in the foregoing reference, ''Where a prisoner pleads guilty to the charge whereof he stands indicted, he thereby subjects himself to the full legal penalty for that offense, as if he had been tried and convicted. A plea of guilty, accepted and entered by the court, is a conviction or the equivalent of a conviction of the highest order, the effect of which is to authorize the imposition of the sentence prescribed by law on a verdict of guilty of the crime sufficiently charged in the indictment or information.''

The petitioner entered a plea of guilty to an indictment which well charged him with the crime of voluntary manslaughter. He therefore has been validly convicted of that offense, which, being a felony, furnishes a proper basis for the imposition of an additional sentence under our habitual criminal statutes.

Although the life sentence imposed under the indictment has been declared invalid, the conviction of the principal offense, a felony, remains and, as heretofore noted, forms a proper basis for the imposition of an additional sentence under our recidivist statutes. In fact, an information alleging prior convictions for two prior felonies having been filed against this petitioner, the only valid sentence which could have been imposed in this case was a sentence of life imprisonment under the provisions of Code, 1931, 61-11-18, as amended. A defendant may not be sentenced for the principal offense and then be given an additional separate sentence upon the information. This, in effect, would result in sentencing one for being an ex-convict. Demonstrating the impropriety of the sen-

tence for the principal offense, Point 3 of the Syllabus of *State ex rel. Cobb v. Boles,* 149 W. Va. 365, 141 S. E. 2d 59, reads: "Where an accused is convicted of an offense punishable by confinement in the penitentiary and, after conviction but before sentencing, an information is filed against him setting forth one or more previous felony convictions, if the jury find or, after being duly cautioned, the accused acknowledges in open court that he is the same person named in the conviction or convictions set forth in the information, the court is without authority to impose any sentence other than as prescribed in Code, 61-11-18, as amended." See also *State ex rel. Jorgenson v. Boles,* 149 W. Va. 395, 141 S. E. 2d 139.

It is the further contention of the petitioner that he was not duly cautioned as required by the provisions of Code, 1931, 61-11-19, as amended, prior to his response to the matters set out in the information filed by the prosecuting attorney. This Court has held in numerous decisions that it is mandatory that a defendant be duly cautioned before a valid sentence can be imposed under our recidivist statutes. *State ex rel. McClure v. Boles,* 149 W. Va. 599, 142 S. E. 2d 773; *State ex rel. Albright v. Boles,* 149 W. Va. 561, 142 S. E. 2d 725; *State ex rel. Beckett v. Boles,* 149 W. Va. 112, 138 S. E. 2d 851. However, the Court has never precisely defined the term "duly cautioned", nor is it defined in the statute. So long as the record reveals that the requirements of fundamental fairness have been satisfied, thereby affording the defendant due process, the requisites of the duly cautioned provision have been fulfilled.

In the instant case the order of sentence, pursuant to the information, recites that the defendant had been duly cautioned concerning his right to a jury trial upon the issue of his identity. Inasmuch, however, as the transcript of the record of the court's action relating to the information is before us in this proceeding, consideration thereof is pertinent here. It is therein

revealed that the court, upon receiving the information, read it in its entirety to the petitioner; that the petitioner was represented by counsel; that the court, in a very thorough manner, advised and explained to the petitioner that he was not required to admit or deny that he was the Elmer Combs mentioned in the information; that the court fully advised the petitioner that he could deny it or remain silent and that in either event a jury would be impaneled to determine the issue; and that upon the petitioner's voluntary admission that he was the Elmer Combs named in the information, the court again expressly advised him that he could have a jury trial if he so desired. To the latter advice of the court the petitioner replied that he did not want a trial.

The record further reveals that throughout the proceeding below the court was conscious of its responsibilities concerning the rights of the petitioner and while it did not, in precise words, advise the petitioner of the consequences of his plea to the information, we believe that the record, in its entirety, clearly shows that the petitioner was sufficiently apprised of the meaning of the information and in no manner was misled. He had been told by the court that under his plea of guilty to the indictment he was subject to either the death penalty or life imprisonment. Furthermore, the court told the petitioner that had an information been filed on his prior conviction it would have been mandatory to add five years to the sentence for that conviction. The petitioner has served twelve years in the penitentiary under two prior felony convictions. But for the manner in which the indictment for the principal offense was drawn, the petitioner would be under conviction for murder. While not determinative of this issue, it is of some import that the petitioner was represented by counsel. In the state of the record of this case we find it difficult to believe that the petitioner was unaware of the consequences of his plea to the information.

The law attaches no importance to mere matters of form. All that it requires is that the substantial rights of the defendant be preserved. *State v. Beatty*, 51 W. Va. 232, 41 S. E. 434. We are of the opinion, upon examination of the entire record, that the court below substantially complied with the duly cautioned provision of Code, 1931, 61-11-19, as amended, thereby affording to the petitioner due process of law and the preservation of his substantial rights.

It having been decided herein that the only valid sentence that could have been imposed on the petitioner was life imprisonment under the recidivist statutes, the petitioner will be relieved of the life sentence erroneously imposed by the trial court under the homicide indictment. However, the life sentence imposed under the provisions of Code, 1931, 61-11-18, as amended, is valid and the petitioner is remanded to the custody of the respondent until he has served such sentence or is released in accordance with the provisions of law.

*Prisoner remanded.*