STATE OF WEST VIRGINIA

*v.*

DEBRA SUE KINNEY

(No. 15127)

Decided January 26, 1982.

*David M. Finnerin,* for appellant.

*Harry G. Deitzler,* Prosecution Attorney, and *Elizabeth A. Pyles,* Assistant Prosecution Attorney, for appellee.

PER CURIAM:

This is an appeal by Debra Sue Kinney from an order of the Circuit Court of Wood County sentencing her to from one to five years in the State penitentiary for unlawful wounding. We granted this appeal principally to determine whether the appellant was legally sane at the time of the commission of the offense charged. After examining the record we conclude that the trial court properly concluded that the evidence on sanity could be construed in varying ways and that the question was one for the jury. Our inspection of the record on that point and on several other points reveals no reversible error. We, therefore, affirm the conviction.

On the night of December 29, 1978, the appellant became involved in a "knock-down-and-drag-out" fight

with one Sherry Kessell after she observed Kessell making love to her former boyfriend, Kenny Kimble. The appellant was beaten in that fight. After the fight Kimble observed the appellant in a phone booth, and she was very upset. Lumps had appeared on her head.

Sometime later the appellant reappeared at the apartment where the fight had occurred. Upon entering she observed Sherry Kessell sitting on Kenny Kimble's lap. She approached with a rifle raised to a horizontal position. Kimble, who later described the appellant as being in a wild state, grabbed the rifle and shoved it toward the floor. As this ocurred, the rifle discharged. The bullet struck Sherry Kessell and caused a paralyzing injury.

After the incident the appellant was indicted for malicious and unlawful assault. While preparing for trial her attorney indicated that there might be a question concerning her mental state at the time of the incident. The judge, upon learning of the possible mental problem, ordered a mental examination pursuant to the provisions of *W.Va. Code* 27-6A-1(b) [1977]. At the conclusion of the examination, the psychiatric staff at Spencer State Hospital who conducted the examination concluded that the appellant was competent to stand trial. After receiving this report the court ruled that the appellant was competent to stand trial.

On appeal the appellant makes two assignments of error arising out of the evidence on her mental state. First, she asserts that the court should have determined, at the time of the competency hearing conducted in accordance with *W.Va. Code* 27-6A-1 [1977], *et seq.*, that she was not criminally responsible by way of insanity and directed a verdict of not guilty by reason of insanity. Second, she claims that the State's evidence did not prove her sanity beyond a reasonable doubt under *State v. Milam,* W.Va. 260 S.E.2d 295 (1979).

To support her first point, that the trial court should have directed a verdict of not guilty by reason of insanity,

the appellant relies on Syllabus Point 1 of *State ex rel. Walton v. Casey*, W.Va. 258 S.E.2d 114 (1979), where we said:

> "A criminal trial is unwarranted when pretrial psychiatric examinations clearly reveal by a preponderance of the evidence, that the accused at the time the crime was committed, was not criminally responsible for his acts."

In *Walton,* while the psychiatrist and psychologists who examined the accused disagreed on the exact character or intensity of his disability, all who addressed the question agreed that he was legally insane at the time of the commission of the crime. No fewer than seven pre-trial reports were filed, and not one was equivocal on the question of criminal responsibility.

In the present case the report from Spencer State Hospital stated that the appellant was competent to stand trial. The report contained ancillary reports submitted by John R. Atkinson, M.A., a psychologist, and Dr. Rugonfalvy, a psychiatrist. In their reports Mr. Atkinson and Dr. Rugonfalvy stated that they could not conclude that the appellant lacked the requisite responsibility at the time she committed the crime. Both individuals in the course of interviewing and testing the appellant observed that she had difficulty in describing to them the events surrounding the crime, while her memory was well preserved on other matters. They had some suspicion that her mental lapse regarding the crime was not entirely genuine. Dr. Wachtel, the clinical director at Spencer, recalled similar conclusions and phrased her dissociative quality a result either of her "diliberately or unconsciously distorting either the quality or the facts themselves." He also indicated that if she had true dissociative periods "her capability to control her behavior at the time of the alleged crime would also be absent or diminished."

Two factors indicate that the trial court did not err in refusing to direct a verdict of not guilty by reason of insanity. First, the level of proof in the appellant's case on lack of criminal responsibility does not rise to the evidentiary level set in *State ex rel. Walton v. Casey,*

*supra.* Second, we have said in *State ex rel. Smith v. Scott,* W.Va. 280 S.E.2d 811 (1981), that *State ex rel. Walton v. Casey, supra,* is moderated to the extent that we recognize that there is no mandatory requirement in *W.Va. Code,* 27-6A-1 [1977], that the trial court make a determination of criminal responsibility prior to trial. We said:

> *"W.Va. Code,* 27-6A-1 [1977] *et seq.* provides no mandatory pretrial mechanism for resolving the issue of criminal responsibility; consequently, adjudication of criminal responsibility before trial is entirely within the combined discretion of the trial court judge and the prosecuting attorney, since absent a motion to *nolle* an indictment by the prosecuting attorney based on persuasive pretrial medical reports, the trial court judge has no discretion to deny the State a trial by jury on the issue of criminal responsibility." Part syllabus, *State ex rel. Smith v. Scott, supra.*

During the appellant's trial the psychiatric testimony was split over whether the appellant had a true dissociative reaction arising from psychological factors which would give rise to a valid insanity claim or whether her forgetfulness of the events at the time of the shooting was part of a practiced deception on the State's psychiatric examiners. It was this conflict in the expert testimony that the jury had to resolve. In *State v. Milam, supra,* at 302, we said:

> "Because of the variegated nature of the evidence surrounding insanity, it is not possible to fashion a particular rule on whether the state has failed to carry its burden of proving sanity beyond a reasonable doubt. It does appear that where the defendant has offered evidence to meet the legal insanity test, shows a mental disease or defect that has its origins in some organic injury or disease, and shows that he has undergone mental treatment, all of which preexisted the date of the crime, the failure of the state to produce countervailing testimony as to his competence will be fatal to its case."

*See, State v. Wimer,* No. 14744 (W.Va. Dec. 10, 1981).

We recognize that under Syllabus Point 2 of *State v. Milam, supra,* that once some evidence of insanity is introduced by a defendant in his case the State must prove sanity beyond a reasonable doubt.

> "There exists in the trial of an accused a presumption of sanity. However, should the accused offer evidence that he was insane, the presumption of sanity disappears and the burden is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the offense. Syllabus point 2, *State v. Milam, supra.*

However, the State's burden of proving sanity beyond a reasonable doubt does not mean that the sanity evidence must be entirely without contradictions. It is factual contradiction which a jury is called upon to resolve, and we believe that where there is factual contradiction on the question of sanity that the question is one for the jury. We find that there was sufficient evidence in the case before us for the jury to have concluded that the appellant was sane at the time the crime was committed.

In addition to claiming that her conviction should be reversed because of the evidence relating to her mental problems, the appellant asserts that the trial court erred in permitting the prosecuting attorney to employ comparative testimony techniques in cross-examining her.

Our rule on comparative testimony techniques is set forth in syllabus point 3 of *State v. Adkins,* W.Wa. 261 S.E.2d 55 (1980), as follows:

> "It is not improper on cross-examination to direct a witness to specific previous testimony of another witness and ask the witness whether he agrees or disagrees with such testimony. It is objectionable on cross-examination to require a witness to state whether another witness' testimony is true or false, since this is the ultimate question that a jury must decide. However, the failure to sustain an objection to such improper question will not necessarily result in error,

unless the technique has been used so pervasively and abusively in the cross-examination as to substantially distort the witness' testimony on critical trial issues."

In the case before us the appellant testified that she had no memory of the shooting. On cross-examination the prosecutor asked her if she remembered shooting Sherry Kessell. The defendant responded: "I did not shoot Sherry Kessell." She was then asked if Sherry Kessell was mistaken when she said that the appellant shot her. She was later asked if Kenny Kimble was mistaken in parts of his testimony.

The appellant contends that the prosecutor's cross-examination employed comparative testimony techniques and that it prejudiced her case.

In *State v. Adkins, supra*, we recognized that our rules regarding comparative testimony were not intended to prohibit cross-examination of a witness in regard to inconsistency in his testimony or to prohibit cross-examination which requires the witness, in light of the contrary testimony of another, to reconsider his own testimony. We recognized that when the cross-examination pointed to specific inconsistencies, rather than general credibility and where the examination did not substantially distort the witness' testimony, the use of comparative testimony techniques while undesirable, would not constitute reversible error.

After carefully examining the record before us, we cannot conclude that the cross-examination techniques employed distorted the testimony or that the court's allowing of them constituted reversible error.

On appeal the appellant also asserts that the trial court erred in admitting into evidence the bullet extracted from Sherry Kessell. She argues that the bullet had no probative value and that the admission of it was inflamatory.

We do not believe that the bullet was inflammatory under *State v. Rowe*, W.Va. 259 S.E.2d 26 (1979), and *State v.*

*Clawson*, W.Va. 270 S.E.2d 659 (1980). Both *Rowe* and *Clawson* dealt with photographs of the deceased victim. The bullet involved in the appellant's case is not at all similar to the photographs in *Rowe* or *Clawson*. Recently in *State v. Scotchel*, No. 14726 (W.Va. Dec. 15, 1981) we addressed the inflamatory evidence issue in connection with a scar and said:

> "A scar represents the present actual condition which is relevant to the issue of intent to cause permanent disability or disfigurement, while a gruesome photograph depicts the initial and temporary extent of the wound where the shock effect often outweighs the probative value of the evidence."

Finally, the appellant argues that the court erred in limiting her examination of certain witnesses and in instructing the jury. We have reviewed the record on these points, and we can find no reversible error.

Accordingly, the judgment of the Circuit Court of Wood County is affirmed.

*Affirmed.*