304 S.E.2d 43

**STATE of West Virginia**

v.

**Joey HALL.**

**No. 15771.**

Supreme Court of Appeals of West Virginia.

May 26, 1983.

Sanders & Austin and Derek Craig Swope, Princeton, for appellant.

Chauncey H. Browning, Atty. Gen., Michael L. Harper and Paul Richard Hull, Asst. Attys. Gen., Charleston, Paul R. Goode, Pros. Atty., Pineville, for appellee.

NEELY, Justice:

On 14 May 1982 our appellant, Joey Hall, was convicted in the Circuit Court of Wyoming County of the murder of James B. (Jim) Laxton, with recommendation of mercy. He appeals from this conviction on several grounds, namely that: (1) the evidence was insufficient to support the verdict; (2) the court erred in allowing a case based solely on the uncorroborated testimony of an accomplice to go to the jury; (3) the court erred in allowing a State witness to testify against appellant in spite of the State's failure to produce the witness's criminal record; (4) the indictment was insufficient; (5) the State failed to prove the *corpus delicti* properly; (6) the appellant was required to respond to the prosecution's demand to discover his intention to offer an alibi defense; (7) the prosecutor engaged in misconduct that entitled appellant to a mistrial; (8) an identification of the appellant by one of the witnesses should have been suppressed; and (9) cumulative error. We will address these claims in order.

I

By order of 19 May 1982, the Circuit Court of Wyoming County denied appellant's motion to set aside the verdict of the jury. We are asked on appeal to reverse this order on the grounds that the evidence is insufficient to support the verdict. On review of the record we find that the problem with the State's evidence is not its sufficiency, but rather its credibility, and credibility is the province of the jury. There was sufficient evidence to convict.

Appellant produced eight alibi witnesses who testified that he was in Tampa, Florida the entire week in which the shooting took place. The State's witnesses included the other man present at the shooting, who gave eyewitness testimony that appellant killed the victim, and a friend and drug client of the victim who testified that he saw Mr. Hall in the victim's trailer in Wyoming County three days before the shooting. Thus the testimony of the alibi witnesses was directly controverted and the jury resolved this conflict in favor of the State. Our rule is that in an appeal from a verdict of guilt in a criminal trial, "[t]he evidence is to be viewed in the light most favorable to the prosecution." *State v. Yates*, 169 W.Va. 453, 288 S.E.2d 522, 523

(1982), citing syl. pt. 1, *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978).

## II

 Appellant argues that his case should not have been permitted to go to the jury, as it was based solely on the uncorroborated testimony of an accomplice. However, the established law in this State is and always has been that "a criminal conviction can be obtained on the uncorroborated testimony of an accomplice," *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423, 426 (1980); *State v. Humphreys*, 128 W.Va. 370, 36 S.E.2d 469 (1945). Since *Humphreys*, we have required that the judge give an instruction cautioning the jury about the inherently suspect nature of the testimony of an accomplice, and the record reveals that a *Humphreys* instruction was given to the jury in this case. The court below, therefore, acted properly in submitting this case to the jury.

## III

 At trial the State's eyewitness was allowed to testify against appellant although the State had failed to provide appellant with information concerning the witness's criminal record, thereby circumscribing the cross-examination and possible impeachment of this key witness. The record below is not clear about what precisely transpired with regard to appellant's efforts to obtain the criminal record, what effect on the trial the criminal record, if available, would have had, or whether the witness had a criminal record at all. We are therefore unable to decide this matter on appeal, and remand the case to the Circuit Court for a full hearing in accordance with the principles of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) as applied by this Court in the recent cases of *State v. Harris*, 169 W.Va. 150, 286 S.E.2d 251 (1982); *State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981); *State v. Clawson*, 165 W.Va. 588, 270 S.E.2d 659 (1980); *State v. Lawson*, 165 W.Va. 119, 267 S.E.2d 438 (1980); and *State v. Brewster*, 164 W.Va. 173, 261 S.E.2d 77 (1979). At the hearing the court below shall determine the "prejudicial ef-

fect on the preparation and presentation of the defendant's case," *State v. Cowan*, 156 W.Va. 827, 835, 197 S.E.2d 641, 646 (1973), of the State's failure to provide the "rap sheet" and determine whether the failure to provide the record was "a fatal non-compliance." *Id.*

The peculiar facts of this case require a moment's analysis of the rule to be applied at the hearing. The witness whose criminal record was sought was the State's star witness, and the only eyewitness to the crime. The witness had been arrested and indicted for this very murder: if Joey Hall was not shown to be the murderer, suspicion would inevitably have focused again on this witness. His testimony went to the jury under the official infirmity of a cautionary *Humphreys* instruction. Furthermore, there are factual discrepancies apparent in the State's case and in this witness's testimony. In short, his testimony carried many indicia of unreliability.

 We are, of course, not empowered to look over a jury's shoulder and second-guess the jury on the issue of credibility. *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967). In the case before us the jury evidently believed the State's witness and was able to resolve the discrepancies. Nonetheless, we have said in an analogous context that where "the case contains a number of substantial key factual conflicts ... there is an increased probability that [an] error will be deemed prejudicial." *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55, 63 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980) (harmless error rule). Similarly, with regard to disclosure of exculpatory evidence, this Court in *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982), quoted with approval the following passage from the United States Supreme Court's opinion in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976):

"It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt wheth-

er or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." 427 U.S. at 112–13, 96 S.Ct. at 2402. (Footnotes omitted)

Although manipulation on appeal of a jury verdict is an enterprise to be undertaken rarely, and in extraordinary circumstances,[1] *Atkins* and *Hatfield* indicate that an appeals court may properly pass on the validity—in light of the evidence—of the jury's conclusions, if for the purpose of assessing the weight of the verdict against the magnitude of the error. The magnitude of this error measured against the weight of this verdict suggests that a reasonable doubt might well have been created by even insubstantial additional impeachment of this vital witness.

■ This case must be remanded on this issue to the circuit court for a hearing to establish the prejudice to appellant of his inability to impeach the witness. By way of guidance to the court, and in light of our discussion, *supra*, we consider that evidence of a felony record or a record of a misdemeanor involving moral turpitude may have had a substantial effect on the jury's decision, and that the State's refusal to provide any such record would be reversible error.

## IV

■ Appellant further contends that the following language in the indictment is insufficient:

"The Grand Jurors of the State of West Virginia, in and for the body of the County of Wyoming, and now attending said Court, upon their oaths present that on the 23rd day of April, 1981, in the County of Wyoming, State of West Virginia, Joey Hall committed the offense of 'murder in the first degree' by the willful, deliberate, and premeditated shooting of James B. Laxton with a pistol,

with intent to cause his death, and causing his death, against the peace and dignity of the State."

The contention that the indictment is insufficient is without merit. "An indictment ... for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based." *State v. Eden*, 163 W.Va. 370, 256 S.E.2d 868, 878 (1979), cited in *State v. Fairchild*, 171 W.Va. 137, 298 S.E.2d 110, 116 (1982).

*W.Va.Code*, 61–2–1 [1923] states in pertinent part, that "murder ... by any willful, deliberate and premeditated killing ... is murder of the first degree." Not only does the language of the indictment "substantially follow the statute," but it follows exactly the form, "Indictment for Murder in the First Degree" found in the Appendix of Forms attached to the *West Virginia Rules of Criminal Procedure*, promulgated and adopted by this Court pursuant to its Constitutional authority, *W.Va. Const.*, art. VIII, § 3, and with express legislative acquiescence, *W.Va.Code*, 51–1–4 [1935].

Appellant argues that since malice and felonious intent are not mentioned in this indictment form it is fatally defective insofar as it charges appellant with first degree murder, second degree murder or voluntary manslaughter, because malice and felonious intent are essential elements of these crimes and "it is imperative that the essential elements of [a] crime be alleged in the indictment." Syl. pt. 1, *State ex rel. Combs v. Boles*, 151 W.Va. 194, 151 S.E.2d 115 (1966). Concededly, the State did not follow the form for an indictment for murder provided at *Code*, 62–9–3 [1923] by the Legislature. No particular form of words is required, however, so long as the accused is adequately informed of the nature of the charge and the elements of the of-

**1.** *See, State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978); *State v. Woods*, 155 W.Va. 344, 184 S.E.2d 130 (1971); *State v. Price*, 94 W.Va. 644, 119 S.E. 874 (1923); *State v. Sullivan*, 55 W.Va. 597, 47 S.E. 267 (1904).

fense are alleged. Syl. pt. 3, *State ex rel. Whitman v. Fox,* 160 W.Va. 633, 236 S.E.2d 565 (1977); syl. pt. 1, *State v. Casdorph,* W.Va., 230 S.E.2d 476 (1976). Plainly, the accused is adequately informed of the nature of the charge by this indictment.

In light of the broad standards set forth in *Eden* and *Fairchild, supra,* the indictment also satisfactorily alleges the essential elements of the offense. The words missing from the indictment are "feloniously," "maliciously" and "unlawfully." In their place are the terms "premeditated," and "murder in the first degree." The former terms are necessarily subsumed in the latter, along with a host of other requirements such as sanity and volition that do not need to be expressed. Their inclusion by implication only will cause no prejudice to defendants protected by a constitutional right to competent counsel. The terms of the indictment adequately inform an accused of his jeopardy to a conviction for murder in the first degree. Jeopardy to lesser degrees of homicide,[2] should the evidence adduced at trial support a lesser verdict, we consider an inherent and natural consequence of this greater jeopardy. We therefore consider the indictment sufficient to support a conviction for any of our several degrees of homicide.

## V

Appellant alleges that the *corpus delicti* was not proven by the State. To prove *corpus delicti* in a case of homicide two facts must be established: (1) the death of a human being and (2) the existence of a criminal agency as the cause of death. *State v. Stevenson,* 147 W.Va. 211, 127 S.E.2d 638 (1962) *cert. denied,* 372 U.S. 938, 83 S.Ct. 886, 9 L.Ed.2d 768 (1963). These two facts carry different requirements of proof: the death of the victim must be proven either by direct testimony

or by presumptive evidence "of the strongest kind," syl. pt. 1, *State v. Durham,* 156 W.Va. 509, 195 S.E.2d 144 (1973), citing *State v. Beale,* 104 W.Va. 617, 141 S.E. 7, dissenting opinion at 401 (1928), but criminal agency as the cause may be established by circumstantial evidence or by presumptive reasoning from the adduced facts and circumstances. *Id.*

The State's eyewitness testified that he saw appellant shoot five large caliber bullets at close range into the victim's head and torso and drive off leaving the victim in his car by the side of the road. A passerby found a body that looked dead in a car on the side of the road. Police and paramedics removed a dead body with five bullet holes in it from the automobile at the spot specified. The coroner performed an autopsy on a body identified as the victim by a toe tag with five bullet holes in the head and torso.

This is sufficient evidence both of a death and of its cause by a criminal agency. With respect to the body, the chain of custody as presented at trial is not perfect, but the evidence is overwhelmingly convincing.

## VI

Appellant was required to respond to a prosecutor's demand that appellant serve notice whether he planned to offer an alibi defense and, if so, that he announce the location of the alibi and list the witnesses who saw him there, all pursuant to Rule 12.1, *W.Va.R.Crim.P.* Appellant objects that Rule 12.1 and Rule 16,[3] *W.Va.R. Crim.P.,* are unconstitutional in that they provide for prosecutorial discovery.

Since appellant does not allege that he was ever required to produce anything pursuant to Rule 16, this issue is not fairly raised before us. With respect to Rule 12.1, we will follow the United States Su-

---

**2.** A homicide committed "feloniously" and "unlawfully" amounted to voluntary manslaughter, *State ex rel. Combs v. Boles, supra;* add "maliciously," and it became second-degree murder. *Id.*

**3.** Rule 16, *W.Va.R.Crim.P.,* provides for discovery of the names and addresses of witnesses

the defendant intends to call in the presentation of his case in chief, and for reciprocal discovery by the State of any documents, tangible objects or reports of examinations and tests which are in the custody of a defendant if the defendant has made a request for any similar materials in the custody of the State.

preme Court, which addressed the constitutionality of a similar notice-of-alibi requirement in *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). The Court held that Florida's notice-of-alibi rule, Rule 3.200, *Fla.R.Crim.P.* (rev.1973), was part of a reciprocal discovery scheme (as is ours) and did not deprive criminal defendants of either due process or a fair trial. We agree.

## VII

■ Appellant alleges prosecutorial misconduct in two instances. In the first instance, the prosecutor was engaged in re-direct examination to rehabilitate the State's eyewitness after the defense on cross-examination had pursued discrepancies between his trial testimony and a prior statement. The following exchange took place:

> PROSECUTOR: Would you tell the jury why you lied?
>
> WITNESS: I was told if anyone found out about this I would be dead. I was the only one that knew, and I was trying my best not to get involved in it.
>
> PROSECUTOR: Who told you that?
>
> WITNESS: Mr. Hall. The last words he ever said to me.
>
> PROSECUTOR: Was that the night of the shooting?
>
> WITNESS: Night of the shooting, yes, sir. Plus *knowing his reputation.* (Emphasis added.)
>
> DEFENSE: Objection. Move to strike.
>
> THE COURT: Sustained. Strike it.

Appellant contends that with this reference to Mr. Hall's reputation, along with an earlier statement by the witness that because of his own prior Mafia connections, "I am a dead man just for coming right here and saying this," the State put the defendant's character into issue. We disagree. The "dead man" statement does not appear to be a reference to possible retaliation by Mr. Hall, but rather to possible retaliation by the Mafia for mentioning it in his testimony. The "reputation" statement appears to have been blurted out by the witness. It is not responsive to the prosecutor's question and can therefore

hardly be said to have been solicited by him. Furthermore, appellant's objection was sustained and the statement stricken. We conclude that there was no prosecutorial misconduct here whatsoever.

■ The other instance of alleged prosecutorial misconduct occurred during the State's cross-examination of one of appellant's alibi witnesses:

> Q. You are sure it was the 21st?
>
> A. Yes, I am.
>
> Q. Tim Stewart said they only worked the 22nd and 23rd. Does that make any difference? And he was working for Tim.
>
> A. No.
>
> Q. Tim is not telling the truth?
>
> A. I don't think anybody is not telling the truth.

We addressed the issue of "comparative testimony" most recently in *State v. Kinney*, 169 W.Va. 217, 286 S.E.2d 398 (1982), when we noted that in *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1980):

> ... we recognized that our rules regarding comparative testimony were not intended to prohibit cross-examination of a witness in regard to inconsistency in his testimony or to prohibit cross-examination which requires the witness, in light of the contrary testimony of another, to reconsider his own testimony. We recognized that when the cross-examination pointed to specific inconsistencies, rather than general credibility and where the examination did not substantially distort the witness' testimony, the use of comparative testimony techniques, while undesirable, would not constitute reversible error. *Kinney*, 169 W.Va. at 222, 286 S.E.2d at 401.

*Kinney* squarely addresses this instance of comparative testimony, and the result is crystal clear: the prosecutor's worrying of this specific inconsistency was perhaps undesirably aggressive, but his vigorous pursuit of the State's case did not violate the "tone of fairness and impartiality" it is his duty to maintain. Syl. pt. 3, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).

There is no trace of prosecutorial misconduct anywhere in the record.

## VIII

 Appellant's last discrete assignment of error concerns the identification of him in court by a prosecution witness. This witness, while being held in jail on another charge, was shown a photograph of appellant and identified him as a man he had seen in the victim's trailer several days before the shooting. Appellant argues that the in-court identification of the appellant by this witness was tainted by the overly suggestive photo identification. The United States Supreme Court's standard is that photographic identifications are constitutionally tainted if the procedure used was "so impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). We hold, in this case, that it was not.

Two related but distinct considerations compel this conclusion. The first is that the identification was of the appellant three days before the crime. Concerns arising from a scene-of-the-crime identification, such as the interference with the identification caused by the presumably furtive behavior of the criminal and the presumably panicky state of a victim or eyewitness, apply with less vigor here. More important, however, is the fact that in the run-of-mine criminal identification the victim and the eyewitness know what the crime was, and are trying to identify its perpetrator. Where a victim or eyewitness to a crime is asked to identify a suspect, there are no collateral indicia of the reliability of the identification other than the procedure followed. In this case the admittedly suggestive display of the photograph implied strongly that the figure in the photograph was the criminal, but the witness in this case had to identify, in effect, the crime. The incriminating evidence revealed by this photo show-up—"He's the guy ..."—was confirmed and corroborated by the witness's ability to supply: "that I saw at Jim Laxton's trailer." The evidence that this procedure will not give rise to a very substantial likelihood of misidentification is the requirement that the witness know, without prompting, *where* he had seen the figure in the photograph, and, in this case, that he saw him with the murder victim. These collateral indicia of the reliability of the identification are sufficient to convince us that its reliability easily passes the "very substantial likelihood of ... misidentification" standard, *supra*, and was therefore admissible.

The record suggests that there was no prompting of the witness when he was shown the photograph, and we are therefore satisfied with the identification. Were the facts otherwise—had, for instance, the sheriff asked, "We're looking into the Laxton murder and wonder if you could identify this photograph"—our answer might be different.

## IX

 Finally, appellant declares that the "cumulative error" doctrine enunciated in *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972) and applied in *State v. Wilson*, 157 W.Va. 566, 202 S.E.2d 828 (1974), requires reversal of his conviction. *Smith* tells us that the cumulative error rule will not be applied unless "the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial." Syl. pt. 5, *Smith, supra*. As our consideration of appellant's eight individual assignments of error reveals, the errors were not numerous, nor, with the possible exception of the State's failure to provide its witness's criminal record, did they prevent defendant from receiving a fair trial.

This case is therefore remanded to the Circuit Court of Wyoming County for further proceedings consistent with Part III of this opinion, *supra*, to establish the prejudicial effect of the State's failure to produce its witness's criminal record.

Remanded.