639 S.E.2d 789

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Ernest J. JOHNSON, Defendant Below, Appellant.**

No. 32978.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 20, 2006.

Decided: Nov. 29, 2006.

Concurring Opinion of Justice Starcher Nov. 30, 2006.

A. Courtenay Craig, Esq., Huntington, for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Robert D. Goldberg, Esq., Assistant Attorney General, Charleston, for Appellee.

PER CURIAM.

This case is before the Court on appeal from the September 12, 2005, Order of the Circuit Court of Cabell County, which resentenced Appellant for the purposes of filing the instant appeal. The court had previously entered an Order on May 13, 2003, accepting a jury's verdict of guilty of second degree robbery; and on May 6, 2004, the court entered an Order sentencing Appellant to life with mercy as a recidivist. This Court has before it the petition for appeal, the briefs of the parties, and all matters of record. Following the arguments of the parties and a review of the record herein, this Court finds that the circuit court erred in sustaining the conviction of second degree robbery. Accordingly, this Court reverses the September 12, 2005, Order of the circuit court.

I.

FACTS

In the late evening hours of June 21, 2002, Allen Myers and Ernest Johnson walked into the Marathon Gas Station on Norway Avenue in Huntington, West Virginia, and approached the clerk, Charles Adams. Myers asked Adams if he could make change for a twenty dollar bill. Myers reached into his sock, purportedly to find the twenty dollar bill, but was unable to produce it. Myers then looked up at Adams and said, "You know what's up. He has got a gun," referring to Johnson. Johnson then said, "Give me all of the money now." Johnson kept his hand in his pocket, and at no time was a gun actually produced. The entire incident was recorded by a security camera, and the tape eventually led to the identification of Myers and Johnson.

Johnson was arrested on June 26, 2002, and was taken into custody upon which he gave a Mirandized statement to Detective Chris Sperry about his involvement in the robbery. In that statement, Johnson denied any involvement in the robbery.[1]

Johnson was indicted on a single count of first degree robbery on September 13, 2002. In pertinent part, that indictment alleged that on June 21, 2002, Johnson committed:

the offense of "1ST DEGREE ROBBERY" by unlawfully and feloniously robbing Charles Adams, by using the threat of deadly force by threatening the presentment and use of a firearm, and did steal money belonging to Marathon Gas Station, lawfully in the care, custody and control of Charles Adams by virtue of his employment with Marathon Gas Station, against his will and against the peace and dignity of the State.

The matter went to trial before a jury on May 1, 2003.

Following the State's case, the defense addressed the court as follows:

First of all, the First Degree Robbery charge has to go because there is no proof by the State of use or presentment of a firearm. The statute was changed in the year 2000 and everyone has testified that there was no gun. So, that charge has to go. So, that's my first motion.[2]

The defense next moved for a judgment of acquittal. There was a discussion between the court and counsel for both parties on the language of the first degree robbery statute and the changes made to the statute in 2000 during which the State acknowledged the change in the statute but insisted that the change in the language in no way changed the intent behind the statute. After hearing argument on the motions, the court denied

---

1. Johnson later testified that he was intoxicated at the time that he made the statement to police.

2. The language of the amended statute differed significantly from the pre-amendment statute inasmuch as the Legislature added language that required the actual presentment of a weapon as an essential element of first degree robbery.

**700**

Johnson's motions. The court reserved that it would review the matter at the close of evidence.

Testimony concluded on May 5, 2003. Following the close of the defense's case, the defense again challenged the language contained in the indictment and moved for a judgment of acquittal. The court again denied the motion.

The jury found Johnson guilty of second degree robbery, a lesser included offense of the indicted offense of first degree robbery. Thereafter, the State filed an information charging Johnson as a recidivist, citing a 1996 Louisiana conviction for burglary and a 1997 Louisiana conviction for indecent behavior with a juvenile.

In the meantime, on August 4, 2003, the defense filed a motion for arrest of judgment, the basis of which was that the language contained in the indictment was not consistent with language found in the West Virginia Code. The court heard arguments from both the defense and the State and took the matter under advisement. On January 14, 2004, the court denied the motion.

The recidivism trial was conducted before a jury on April 26, 2004, following which the jury found that Johnson was indeed the man convicted in the two Louisiana cases charged in the information. The court promptly sentenced Johnson to life in prison with mercy. The defense filed a motion to dismiss and/or set aside the judgment in the recidivist trial based primarily upon a proportionality argument, but the court ultimately denied the motion. Johnson now appeals.

## II.

### STANDARD OF REVIEW

Three main issues are presented in this case. The first issue centers on the sufficiency of the indictment. The second issue questions whether the custodial statement made by Johnson to the police should have been suppressed because Johnson was not promptly presented before a magistrate following his arrest. The final issue charges that Johnson's life sentence as a recidivist should be vacated because it is unconstitutionally disproportionate.

■ As to the indictment issue, we have held that "Generally, the sufficiency of an indictment is reviewed *de novo*. An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." Syllabus Point 2, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996). As to the suppression issue, in Syllabus Point 1 of *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996), we held that:

When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Finally, as to the recidivism issue we have explained that "[t]he Supreme Court of Appeals reviews sentencing orders ... under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus Point 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997). With these standards in mind, we turn to a discussion of the case.

## III.

### DISCUSSION

A. The Sufficiency of the Indictment

■ Johnson's first argument is that the indictment under which he was charged was insufficient inasmuch as it charged an offense which no longer existed in West Virginia at the time of his arrest. Therefore, Johnson contends that the court had no jurisdiction over him. The State concedes that the indictment misstated the essential elements of the crime of first degree robbery, but argues that the defect does not require reversal.

The indictment was worded thus:

THE GRAND JURY CHARGES:

That on or about the 21st day of June, 2002, in the County of Cabell, State of

West Virginia, ERNEST J. JOHNSON AND ALLEN MYERS jointly committed the offense of "1ST DEGREE ROBBERY" by unlawfully and feloniously robbing Charles Adams, by using the threat of deadly force by threatening the presentment and use of a firearm, and did steal money belonging to Marathon Gas Station, lawfully in the care, custody and control of Charles Adams by virtue of his employment with Marathon Gas Station, against his will and against the peace and dignity of the State.

The indictment reflects the language of West Virginia Code § 61–2–12 prior to its amendment in 2000. However, the language of the statute subsequent to the amendment states that:

(a) Any person who commits or attempts to commit robbery by:

(1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force *by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree* and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.

(b) Any person who commits or attempts to commit robbery by placing the victim in fear of bodily injury *by means other than those set forth in subsection (a)* of this section or any person who commits or attempts to commit robbery by the use of any means designed to temporarily disable the victim, including, but not limited to, the use of a disabling chemical substance or an electronic shock device, *is guilty of robbery in the second degree* and, upon conviction thereof, shall be confined in a correctional facility for not less than five years nor more than eighteen years.

(Emphasis added.) Johnson argues that while the indictment purports to charge first degree robbery, it clearly does not. Because he did not present a firearm or other weapon in the commission of the crime, Johnson contends that he could not be charged with first degree robbery under the language of the statute as amended. We agree.

■ We have held that " '[i]n order to lawfully charge an accused with a particular crime it is imperative that the essential elements of that crime be alleged in the indictment.' Syllabus Point 1, *State ex rel. Combs v. Boles,* 151 W.Va. 194, 151 S.E.2d 115 (1966)." Syl. Pt. 4, *State v. Palmer,* 210 W.Va. 372, 557 S.E.2d 779 (2001). Such is not the case here. In amending the statute, the Legislature clearly changed the language to include the essential element of "the presenting of a firearm or other deadly weapon." Johnson's indictment did not reflect the required presenting of a firearm or other deadly weapon.

■ We have also held that " '[a]n indictment for a statutory offense is sufficient if, in charging the offense, it *substantially follows* the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syllabus Point 3, *State v. Hall,* 172 W.Va. 138, 304 S.E.2d 43 (1983)." Syl. Pt. 8, *State v. Bull,* 204 W.Va. 255, 512 S.E.2d 177 (1998) (emphasis added). However, it cannot be said that the indictment under which Johnson was charged "substantially follows" the language of the first degree robbery statute as amended. Likewise, it cannot be said that the indictment "fully informs the accused of the particular offense with which he is charged" because the language of the indictment purports to charge first degree robbery while in substance charging, at most, second degree robbery.

■ The question becomes, then, whether Johnson made a timely objection to the sufficiency of the indictment. This Court has held in Syllabus Point 1 of *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996), that:

Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure requires that a defendant must raise any objection to an indictment *prior to trial.* Although a challenge to a defective indictment is never waived, this Court literally will construe an indictment in favor of validity where a defendant fails timely to challenge its sufficiency. Without objection, the indictment should be upheld *unless it is so defective that it does not, by any reasonable construction, charge an offense under West Virginia law* or for which the defendant was convicted.

(Emphasis added.) Our decision in *Miller* is fatal to the position of the State herein. The indictment was so defective as not to charge an offense under West Virginia law as it existed in 2002. It, therefore, makes no difference when the objection to the indictment was made because such a challenge cannot be waived.

Timeliness also has bearing on the motion in arrest of judgment made on August 4, 2003. Rule 34 of the West Virginia Rules of Criminal Procedure requires that a "motion in arrest of judgment shall be made within ten days after verdict or finding of guilty, or after plea of guilty or *nolo contendere*, or within such further time as the court may fix during the ten-day period." Here, the motion for arrest of judgment was made 61 days after the verdict was rendered. Johnson argues that while the motion was filed well outside the time limit set by Rule 34, the basis for the motion was insufficiency of the indictment, an issue which was raised twice during the trial. We find that, though the motion in arrest of judgment was not timely made as required by Rule 34, the defects in the indictment are such that they cannot be ignored on the basis of a technicality such as timeliness. Even the State and the trial court itself questioned the sufficiency of the indictment. We agree with Johnson that the indictment simply did not reflect the language of the law of first degree robbery at the time that the crime was committed. Accordingly, the indictment was so defective as not to charge an offense under West Virginia law, and one can raise such a defect at any time.

The State points out that in *United States v. Cotton*, 535 U.S. 625, 626, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), the United States Supreme Court specifically overruled its prior ruling in *Ex Parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), which held that a trial court had no subject-matter jurisdiction over an indictment which failed to allege all of the elements of an offense. The decision in *Cotton* was issued fifteen days after the verdict in the instant case; however, the *Cotton* Court points out that "[p]ost-*Bain* cases confirm that indictment defects do not deprive a court of its power to adjudicate a case. *See e.g., Lamar v. United States*, 240 U.S. 60, 36 S.Ct. 255, 60 L.Ed.

526. Thus, this Court some time ago departed from *Bain*'s view that indictment defects are 'jurisdictional.' *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252; *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240, distinguished." *United States v. Cotton*, 535 U.S. 625–626, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). However, we are not persuaded by the State's reliance on *Cotton* as Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure clearly finds that Johnson may raise an objection to the sufficiency of an indictment based on the failure to state an offense at any time during the criminal proceeding. *See State v. Tommy Y., Jr.*, 219 W.Va. 530, 637 S.E.2d 628 at page 631 (2006).

Johnson finally argues that the defects in the indictment could not be corrected through instruction to the jury. The State points out that it was the defense which asked for an instruction on second degree robbery, and it was second degree robbery of which Johnson was convicted. Furthermore, the elements of second degree robbery were clearly set out in the indictment, so whatever defect existed in the indictment, it was harmless. We disagree with the State. As we have already pointed out, "[a]n indictment which does not allege every material element of the offense sought to be charged is defective and void..." Syl.Pt. 3, in part, *State ex rel. Cain v. Skeen*, 137 W.Va. 806, 74 S.E.2d 413 (W.Va., 1953). The indictment in the instant case clearly did not seek to charge any offense but first degree robbery, and it failed to charge first degree robbery. Therefore, it is void, and Johnson's conviction is vacated on the basis of the defects contained in the indictment.

. B. Prompt Presentment

■ We address Johnson's second argument is that the statement he made to police on June 26, 2002, should have been suppressed because he was not promptly presented before a magistrate because the State may seek to re-indict Johnson for second degree robbery. Johnson asserts that the sole purpose for the delay was to obtain an incriminating statement. We find no merit in this argument whatsoever.

West Virginia Code § 62–1–5(a)(1) directs that "[a]n officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence or as otherwise authorized by law, shall take the arrested person without unnecessary delay before a magistrate of the county where the arrest is made." Rule 5(a) of the West Virginia Rules of Criminal Procedure reiterates this principle. Johnson was arrested at approximately 5:20 p.m. on June 26 and was presented before a magistrate at some time before 8:00 p.m. that same evening.[3] The "delay," then, was no more than two hours and forty minutes. It should also be noted that between 5:20 p.m. and 6:41 p.m., the police were questioning Johnson's accomplice, Allen Myers.

We have held that "[w]hen a statement is obtained from an accused in violation of the prompt presentment rule, neither the statement nor matters learned directly from the statement may be introduced against the accused at trial." Syl. Pt. 1, *State v. DeWeese,* 213 W.Va. 339, 582 S.E.2d 786 (2003). However, in *DeWeese,* we specifically found that the facts in that case clearly established that the defendant, who was held for fifteen hours before being presented to a magistrate, was not promptly taken before a magistrate because the police wanted to obtain a statement from him. In the instant case, Johnson has produced no evidence that the delay in his presentment was for the purpose of obtaining a statement, and we can find no evidence of such a motive either.

█ For the first hour and twenty-one minutes that he was held, the detectives were interviewing Johnson's accomplice. Johnson was then Mirandized and interviewed between 6:43 p.m. and 7:00 p.m. There was no shake-down. Johnson was not harangued or otherwise coerced into making a statement.[4] He was read his rights and then allowed to speak in narrative with very little interruption or questioning from the detective. Moreover, the statement that Johnson gave to police was in no way a confession. To the contrary, Johnson maintained his innocence throughout the interview. He did repeatedly refer to his "jacket," a slang term for criminal record, but that did not in any way incriminate him in the Marathon robbery. " ' "The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant." Syllabus Point 6, *State v. Persinger,* [169] W.Va. [121], 286 S.E.2d 261 (1982), as amended.' Syllabus Point 1, *State v. Guthrie,* 173 W.Va. 290, 315 S.E.2d 397 (1984)." Syl. Pt. 8, *State v. Milburn,* 204 W.Va. 203, 511 S.E.2d 828 (1998). Such was not the case here, so, showing deference to the trial court, we find no error in the court's admission of Johnson's statement to police.

### C. The Proportionality of the Recidivist Life Sentence

Johnson's final argument is that his recidivist life sentence should be vacated because the underlying felonies on which the recidivist conviction was based were not of a violent nature; therefore, the sentence violates the proportionality rule. Because the reversal of Johnson's conviction vacates his sentence, this issue is now moot, and we find no reason to address it.

### IV.

### CONCLUSION

Given all of these considerations, we find that the indictment was so insufficient as to prejudice Johnson's due process rights. The trial court therefore erred in denying John-

---

**3.** The Jail Commitment Order reflects that an officer took custody of Johnson at 8:00 p.m. on June 26, 2002.

**4.** At trial, there was some discussion as to whether Johnson was intoxicated when he gave his statement. Beyond Johnson's assertion that he was intoxicated, there was no evidence that he was intoxicated or otherwise impaired so as to be unable to waive his rights. Furthermore, on appeal, Johnson virtually abandoned any argument that his statement was involuntary due to intoxication for the prompt presentment argument when he acknowledged that "while the Judge's ruling on voluntariness regarding Mr. Johnson's intoxication may have been correct, his ruling regarding the admission of said statement was clearly erroneous under a prompt presentment argument. . . . "

son's motion in arrest of judgment. We therefore reverse the trial court and vacate Johnson's conviction. We further find that there was no violation of the prompt presentment rule; therefore, the trial court did not err in admitting Johnson's statement to police at trial. Finally, we find that the challenge to Johnson's life sentence is now moot. Johnson's conviction is hereby reversed.

Reversed

STARCHER, J., concurring.

I concur with the majority opinion and its result, but I wish to add a comment to this Court's brief discussion of the recidivism issue.

The record in this case shows a prosecutor straining to get improper evidence and innuendo in front of a jury on the recidivism issue. The State commendably acknowledges possible error by the trial court in its rulings on objections to the prosecutor's efforts, but suggests that any such errors were "harmless." However, there is no room for "harmless error" when the ultimate issue is whether a person will be imprisoned for life as the result of crimes for which he or she has already paid the legal penalty.

For these reasons, I would hold that the recidivism proceedings in the lower court were flawed, as well as the charging process.

Accordingly, I concur.