IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 15-0715

_____

FILED

**June 16, 2017**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA, Plaintiff Below,
Respondent

v.

CHAZ A. SIMMONS, Defendant Below,
Petitioner

_____

Appeal from the Circuit Court of Roane County
The Honorable Thomas C. Evans, III, Judge
Criminal Action No. 14-F-23

AFFIRMED

_____

Submitted: May 3, 2017
Filed: June 16, 2017

Jason D. Parmer, Esq.                          Patrick Morrisey, Esq.
Appellate Advocacy Division             Attorney General
Public Defender Services                   Benjamin F. Yancey, III, Esq.
Charleston, West Virginia               Assistant Attorney General
Counsel for the Petitioner               Charleston, West Virginia
                                                        Counsel for the Respondent

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

2.      "'When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below.  Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues.  Therefore, the circuit court's factual findings are reviewed for clear error.'  Syl. Pt. 1, *State v. Lacy,* 196 W.Va. 104, 468 S.E.2d 719 (1996)."  Syllabus Point 2, *State v. Johnson*, 219 W.Va. 697, 639 S.E.2d 789 (2006).

3.      "As a general matter, a defendant may not assign as error, for the first time on direct appeal, an issue that could have been presented initially for review by the trial court on a post-trial motion."  Syllabus Point 2, *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998).

4. "When a defendant assigns an error in a criminal case for the first time on direct appeal, the state does not object to the assignment of error and actually briefs the matter, and the record is adequately developed on the issue, this Court may, in its discretion, review the merits of the assignment of error." Syllabus Point 3, *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998).

5. "The West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction; any statutory or common-law procedural rule that conflicts with these Rules is presumptively without force or effect." Syllabus Point 5, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999).

6. Under Rule 12(f) of the West Virginia Rules of Criminal Procedure, if a defendant fails to seek to suppress a confession or other inculpatory statement prior to trial as required under Rule 12(b)(3), such failure constitutes waiver, absent a showing of good cause.

7. Syllabus Point 1 of *State v. Fortner*, 150 W Va. 571, 148 S.E.2d 669 (1966), has been superseded by Rule 12 of the West Virginia Rules of Criminal Procedure and is of no force or effect.

8.    "'Our prompt presentment rule contained in W. Va. Code, 62–1–5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest.  Furthermore, once a defendant is in police custody with sufficient probable cause to warrant an arrest, the prompt presentment rule is also triggered.'  Syl. Pt. 2, *State v. Humphrey,* 177 W.Va. 264, 351 S.E.2d 613 (1986)."  Syllabus Point 4, *State v. Rogers*, 231 W.Va. 205, 744 S.E.2d 315 (2013).

9.    "'The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant.' Syllabus Point 6, *State v. Persinger,* [169] W.Va. [121], 286 S.E.2d 261 (1982), as amended."  Syllabus Point 1, *State v. Guthrie*, 173 W.Va. 290, 291, 315 S.E.2d 397 (1984).

10.    "The delay between the time of the arrest or custodial interrogation and the giving of a confession is most critical for prompt presentment purposes because during this time period custodial confinement and interrogation can be used to attempt to produce a confession."  Syllabus Point 2, *State v. Wickline*, 184 W.Va. 12, 399 S.E.2d 42 (1990).

11.    "Ordinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confession

under our prompt presentment rule." Syllabus Point 4, *State v. Humphrey,* 177 W.Va. 264, 351 S.E.2d 613 (1986).

WALKER, Justice:

Chaz A. Simmons appeals the July 21, 2015, Amended Order of the Circuit Court of Roane County, West Virginia, entering a guilty verdict on a two count Indictment for driving under the influence of alcohol ("DUI"). The circuit court sentenced him to two to ten years for the felony Count I, DUI Resulting in Death, and one year for the misdemeanor Count II, DUI Resulting in Injury.

On appeal to this Court, Mr. Simmons argues the circuit court erred in admitting his statements to police into evidence at trial. Specifically, in his first assignment of error, Mr. Simmons argues that the circuit court committed reversible error for failing to fulfill its mandatory duty to conduct a hearing on the voluntariness of a written ("first") statement he signed while at the hospital shortly after the vehicular accident. Mr. Simmons asserts that, pursuant to *State v. Fortner,* 150 W.Va. 571, 148 S.E.2d 669 (1966), this Court must remand this case for that hearing. In his second assignment of error, Mr. Simmons argues that the circuit court committed reversible error in admitting a recorded ("second") statement into evidence at trial. He asserts that the police delayed presenting him to the magistrate for the primary purpose of obtaining that second statement in violation of the prompt presentment rule codified in West Virginia Code § 62-1-5(a)(1) (2014) and Rule 5(a) of the West Virginia Rules of Criminal Procedure.

1

Upon consideration of the parties' briefs and arguments, the submitted record and pertinent authorities, we affirm the order of the circuit court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At approximately 2:34 a.m. on July 18, 2013, Mr. Simmons drove a truck into a building located along Route 36 near Looneyville, Roane County, West Virginia, killing a woman and seriously injuring a man while they slept. The police arrived at the scene approximately twenty-five minutes later and instructed the first responders to transport Mr. Simmons to Roane General Hospital ("RGH") to be evaluated for any injuries. Police arrested Mr. Simmons between 4:30 and 6:00 a.m. and subsequently presented him to the magistrate between 8:00 a.m. and 10:00 a.m. that same morning.

On January 29, 2014, a Roane County Grand Jury issued a two count Indictment charging Mr. Simmons with violation of West Virginia Code § 17C-5-2(a), DUI Resulting in Death and West Virginia Code § 17C-5-2(c), DUI Resulting in Bodily Injury.

On May 27, 2014, counsel for Mr. Simmons filed a motion to suppress all "statements made by the defendant," asserting that "[a]ny statement taken from the defendant was not free and voluntary." The motion was not specific as to what statement or statements Mr. Simmons was seeking to suppress. Two days later, on May 29, 2017,

2

the circuit court held a pre-trial hearing for the presentation of arguments on the motion to suppress.

Sergeant Matthew "Bo" Williams ("Deputy Williams")[1] testified regarding the second statement he obtained from Mr. Simmons after his arrest. Deputy Williams testified that he arrested Mr. Simmons at RGH between 4:30 a.m. and 6:00 a.m. With respect to the time period between Mr. Simmons's arrest and his presentment to the magistrate, Deputy Williams testified as follows:

> He was taken to the sheriff's department, placed in the holding cell while I – I believe while I worked on the search warrant for the vehicle, and then after that he was taken from the cell, we went back into the kitchen area, conducted our interview and then he was, I believe, taken back to the cell while I finished my criminal complaint, and then we went to magistrate court.
>
> ***
>
> And our – the processing – our processing is basically a criminal complaint, fingerprints, CDR, and then they go to magistrate court. And then they're in – anything else we do after the fact so that we don't waste a lot of time before hand and waste people's time, judge's time and stuff.

---

[1] At the time of the vehicular accident on July 18, 2013, Matthew "Bo" Williams was a deputy employed by the Roane County Sheriff's Office. At the time of the suppression hearing on May 29, 2015, he had changed employment and now worked for the City of Spencer as a sergeant. For the sake of simplicity, we refer to Sergeant Williams as Deputy Williams.

With respect to the interview itself, Deputy Williams testified that he filled out the *Miranda*[2] form and read the entirety of the document to Mr. Simmons in the presence of State Police Sergeant Fred Hammick. He testified that the interview took place in the "kitchen/interrogation" room at the table in the Roane County Sheriff's Department. According to Deputy Williams, the process he uses when taking a statement is to read each question and put a check-mark beside that line and turn the paper over to the suspect to sign by each line. He testified that when he is finished with the whole form, he puts an "X" by the signature line for the waiver of rights and turns the form over to the suspect to sign and date. Deputy Williams testified that he advised Mr. Simmons at the time of the interview that he was under arrest. He further testified that Mr. Simmons signed the waiver form and gave a second statement confessing to driving the truck into the building off Route 36, killing Kelly Casto and injuring William Cottrell. Deputy Williams indicated that he recorded the statement on a disc.

In response to various questions about how he conducted the interview, Deputy Williams testified as follows:

> Q: Was Mr. Simmons handcuffed at the time?
>
> A: I don't believe so.
>
> ***

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Q: Did he ever ask to stop the interview?

A: No, sir.

***

Q: At any time did he ask this statement to stop?

A: No.

***

Q: Were there any threats or promises made to him?

A: No, sir.

***

Q: During the course of the statement, did you promise him anything, lenience, or that you [would] put in a good word [with] the prosecuting attorney?

A: I don't believe so.

As to questions regarding Mr. Simmons's demeanor, Deputy Williams reported that he was emotional, but not belligerent or extremely intoxicated. He further explained that Mr. Simmons could understand questions, initial the forms, sign his name, and read the *Miranda* form, all without difficulty.

Deputy Williams testified that he recorded the second statement taken at 7:30 a.m., and that the magistrates are usually available between 8:30 a.m. and 9:00 a.m. When asked what time he took Mr. Simmons to the magistrate, Deputy Williams stated

5

that he first had to finish processing paperwork after the interview, but it was "anywhere between 8:00 and 10:00 probably." As a final question, the prosecutor asked Deputy Williams, "[w]as there any intended delay in taking him up to the magistrate?" Mr. Simmons responded, "[n]o, sir."

Thereafter, the circuit court ruled that the second statement could be admitted into evidence at trial. In response to Mr. Simmons's argument that the State violated the prompt presentment rule, the court reasoned:

> There is no evidence here that this man was impaired to the extent that he could not understand what his constitutional rights were. There's no evidence of police mistreatment, extended delays, any of that. What the policeman was doing here [were] legitimate law enforcement activities. The delay was occasioned by the requirement[s] under state law that the policeman process the person who is arrested and that includes fingerprinting and other steps in the processing of a person that's arrested. All that's mandated by state law. In addition, some of the delay here was obviously occasioned by the application for these two warrants or at least one of the warrants. So there's no evidence that this man was promised anything or threatened in any way [or that] the police used other unlawful [i]nducements.

The trial took place on February 10, 11, and 12, 2015. The State called West Virginia State Police Corporal Pete Fisher to testify about the circumstances surrounding the first statement taken from Mr. Simmons. Corporal Fisher first saw Mr. Simmons in the emergency room. Corporal Fisher testified that he did not arrest or detain Mr. Simmons, but he did take a statement from him. After the first statement was

6

admitted into evidence without objection from Mr. Simmons, Corporal Fisher answered questions from defense counsel regarding whether Mr. Simmons drove the truck that night. Corporal Fisher explained:

> When I first got there, I asked him what happened this evening, he said – and this is where the statement comes in, when I asked him, he says – and this is prior to taking the statement – that I was driving my truck and I got in an accident. I then get my paper out, I write the statement of everything that was written there.

West Virginia State Police Sergeant Fred Hammick also testified at trial that he assisted Deputy Williams. Sergeant Hammick affirmed that he performed the search of the pickup truck and that he was present when Deputy Williams recorded the second statement. He testified that "… [Deputy Williams] wanted to do an interview with the suspected driver of the vehicle, and we did a search warrant as well."

At the close of the State's case-in-chief, counsel for Mr. Simmons made a motion for acquittal arguing that the State's evidence was insufficient to support a case for DUI because the State had not presented evidence on all of the elements of that crime. Mr. Simmons did not raise any objection regarding admission of the first or second statements at this time. The circuit court denied the motion on the grounds that the evidence was sufficient to support both counts of DUI.

Mr. Simmons presented witnesses and testified on his own behalf. He did not testify that Deputy Williams or Sergeant Hammick interrogated him or engaged in conduct that in any way coerced or induced him to give an incriminating statement. When asked if he was so intoxicated he did not know what he was doing when he signed the *Miranda* waiver form, Mr. Simmons testified "I'm not saying that at all. I was in shock."

At the close of the trial, the jury returned a verdict convicting Mr. Simmons on both counts of DUI. Thereafter, Mr. Simmons filed a post-trial motion for a new trial.[3] At the hearing on March 17, 2015, Mr. Simmons argued that the second statement should not have been admitted because he was intoxicated and therefore, could not knowingly and intelligently have waived his *Miranda* rights. Mr. Simmons did not argue at this hearing that the circuit court admitted the second statement into evidence at trial in violation of the prompt presentment rule. He also did not argue that the circuit court erroneously admitted the first statement for failure to fulfill his mandatory duty to conduct the voluntariness hearing. The circuit court stated at the hearing "I'm not presented with anything to change the ruling on the admissibility of Chaz's [Mr. Simmons's] statement . . . ." Likewise, in the order entered on April 6, 2015, the circuit

---

[3] Mr. Simmons also filed a post-trial motion for acquittal based upon the same arguments made at the close of the State's case-in-chief. The circuit court denied this motion as well.

court formally ruled that "[u]pon consideration of argument of counsel the Court finds no reason to change any prior rulings concerning the admission of the Defendant's [Simmons's] [second] statement . . . ." Thus, the court denied the motion for a new trial and set the hearing date for sentencing. The circuit court subsequently sentenced Mr. Simmons to two to ten years in the custody of the Department of Corrections for the felony conviction on Count I (DUI Resulting in Death) and one year in the custody of the Regional Jail Authority for the misdemeanor conviction on Count II (DUI Resulting in Injury). The circuit court ordered that Mr. Simmons serve the sentences consecutively. The circuit court entered the July 21, 2015, Amended Order,[4] and Mr. Simmons filed the instant appeal.

## II. STANDARD OF REVIEW

The first assignment of error Mr. Simmons raises relates to the duty of the circuit court, as a matter of law, to conduct a voluntariness hearing on the admissibility of his first statement. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

---

[4] Mr. Simmons's appellate counsel was appointed on July 1, 2015, after entry of the verdict order. For purposes of appeal, the circuit court entered the July 21, 2015 Amended Order, which the Public Defender Appellate Division appealed on July 24, 2015.

Mr. Simmons's next assignment of error relates to the circuit court's ruling at the pre-trial hearing permitting the admission of his second statement into evidence at trial. In this regard, we apply the following standard of review:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error. Syl. Pt. 1, *State v. Lacy,* 196 W.Va. 104, 468 S.E.2d 719 (1996).

Syl. Pt. 2, *State v. Johnson*, 219 W.Va. 697, 639 S.E.2d 789 (2006).

With these standards of review in mind, we proceed with addressing the merits of the issues before us.

## III. DISCUSSION

Mr. Simmons raises two assignments of error in this appeal. The first issue is whether the circuit court had a mandatory duty to conduct a hearing, sua sponte, out of the presence of the jury, as to the voluntariness of his first statement prior to its admission into evidence at trial. The second issue is whether Mr. Simmons's second statement should have been admitted into evidence, as Mr. Simmons argues it was obtained in violation of the prompt presentment rule.

10

### A.     *Mandatory Duty of Circuit Court to Conduct Voluntariness Hearing*

Mr. Simmons argues that West Virginia law establishes that a circuit court has a mandatory duty to conduct a voluntariness hearing on its own motion, despite the fact that he failed to file a motion to suppress the first statement or raise the issue in a post-trial motion. He asserts that the first statement was not voluntarily given and should have been excluded from evidence because the record shows that he was intoxicated and in a custodial environment. The State argues that the mandatory hearing requirement does not apply in this case because Mr. Simmons was coherent when he signed the first statement and it was taken prior to any action by Corporal Fisher or any other police officer and before any accusation, arrest, or custodial interrogation.

Before considering Mr. Simmons's first assignment of error, however, we must first consider whether the issue is properly before this Court. In *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998), we held "[a]s a general matter, a defendant may not assign as error, for the first time on direct appeal, an issue that could have been presented initially for review by the trial court on a post-trial motion." *Id.* at Syl. Pt. 2. We have, in criminal cases presenting a narrow set of circumstances on a significant issue, exercised our discretion under the "raise or waive" rule as follows:

> When a defendant assigns an error in a criminal case for the first time on direct appeal, the state does not object to the assignment of error and actually briefs the matter, and the record is adequately developed on the issue, this Court may, in its discretion, review the merits of the assignment of error.

11

*Id.* at Syl. Pt. 3. The facts in the record demonstrate that Mr. Simmons did not raise the involuntariness of his first statement at the trial court level, and for purposes of appeal, he has waived the issue. However, the State has not objected to the assignment of error and actually briefed the matter. Thus, we find the record is adequately developed, and we exercise our discretion to review the merits of this assignment of error given the narrow circumstances under which our current common law imposes a mandatory duty on a trial court to conduct a voluntariness hearing on its own motion, despite the obligation of a criminal defendant to raise the issue prior to trial.

Whether the circuit court had a mandatory duty to conduct a pre-trial voluntariness hearing regarding the first statement, in the absence of a motion to suppress, is controlled by Rule 12 of the West Virginia Rules of Criminal Procedure. Specifically Rule 12(b)(3) requires that a motion to suppress an inculpatory statement be raised as follows:

> (b) *Pretrial motions.* – Any defense, objection or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:
>
> \*\*\*

> (3) motions to suppress evidence unless the grounds are not known to the defendant prior to trial; . . .[5]

> \*\*\*

W.Va. R. Crim. Pro. 12(b)(3) (footnote added).

Rule 12(f) sets out the consequences of a defendant's failure to properly move the trial court to suppress a confession:

> (f) *Effect of Failure to Raise Defenses or Objections.* Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, may constitute waiver thereof, but the court for cause shown should grant relief from the waiver.

W.Va. R. Crim. Pro. 12(f).

A review of these provisions of Rule 12 establishes three points unequivocally. First, the rule does not require the circuit court, sua sponte, to conduct a hearing prior to trial, out of the presence of the jury, to determine whether an inculpatory statement is voluntary. Second, the rule imposes an obligation on a defendant to raise the issue. And third, the rule establishes that if a defendant fails to timely raise the issue of the voluntariness of his or her inculpatory statement, the issue may be deemed waived.

---

[5] Nothing in the record suggests that Mr. Simmons was unaware of his first statement prior to trial.

13

This Court summarily addressed the issue of waiver under Rule 12 in *State v. Strock*, 201 W.Va. 190, 495 S.E.2d 561 (1997). In *Strock* the defendant was charged with alcohol related driving offenses and providing false information to a police officer. The defendant was convicted of the charges in magistrate court. The defendant brought a de novo appeal in circuit court. Although the defendant made an oral confession when he was arrested, he failed to ask the circuit court to suppress the statement prior to trial. After his confession was introduced into evidence, the defendant moved the circuit court to strike the testimony. The trial court denied the motion to strike. On appeal, the defendant argued that the trial court erred in failing to strike his confession. We rejected the argument succinctly as follows:

> This Court believes that the appellant's first claim on appeal, that the trial court erred in failing to strike the testimony relating to his statements, is without merit. Rule 12(b) of the West Virginia Rules of Criminal Procedure specifically states: "The following must be raised prior to trial: . . . (3) Motions to suppress evidence unless the grounds are not known to the defendant prior to trial . . . [.]" The Court believes that the appellant, by failing to move to suppress the statements in issue, of which he was well aware, prior to trial, effectively waived his right to challenge their admission into evidence.

*Id.* at 192, 495 S.E.2d at 563. In *Strock* we said:

> "The following must be raised prior to trial: . . . (3) Motions to suppress evidence unless the grounds are not known to the defendant prior to trial . . . [.]" Part, Rule 12(b), West Virginia Rules of Criminal Procedure.

*Id.* at Syl. Pt. 1. *See Walker v. Ballard*, No. 12-0138, 2013 WL 1632113, at *17 (W. Va. Apr. 16, 2013) (memorandum decision).

14

As such, consistent with our opinion in *Strock*, we now hold that under Rule 12(f) of the West Virginia Rules of Criminal Procedure, if a defendant fails to seek to suppress a confession or other inculpatory statement prior to trial as required under Rule 12(b)(3), such failure constitutes waiver, absent a showing of good cause. *See State v. Sugg*, 193 W.Va. 388, 403, 456 S.E.2d 469, 484 (1995) ("[f]ailure to make this motion [to suppress] will under most circumstances constitute waiver under Rule 12(f) of the Rules of Criminal Procedure."). Likewise, under Rule 12 of the Federal Rules of Criminal Procedure, defendants are required to raise the issue of the voluntariness of an inculpatory statement, or the matter may be deemed waived. *See, e.g., United States v. Jones*, 558 F. App'x 557, 560 (6th Cir. 2014) (objection to government's technique in obtaining confession was waived because of failure to file a pretrial suppression motion); *United States v. Lugo Guerrero*, 524 F.3d 5, 11 (1st Cir. 2008) (motion to suppress filed two-and-one-half months after the deadline set by court constitutes waiver); *United States v. Kirkland*, 567 F.3d 316, 322 (7th Cir. 2009) (defendant must raise a suppression motion prior to trial to avoid waiver or forfeiture as well as comply with any timing requirements set by the district court); *United States v. Nayyar*, 221 F. Supp.3d 454 (S.D.N.Y. 2016) (a suppression motion that is not made before trial "is untimely," and may not be considered unless good cause shown).

Although it is clear that under Rule 12(b)(3) Mr. Simmons waived the issue of the suppression of his first statement, he nonetheless contends that the issue is not waived in reliance upon our holding in Syllabus Point 1 of *State v. Fortner*, 150 W.Va. 571, 148 S.E 2d 669 (1966), *overruled in part by State ex rel. White v. Mohn*, 168 W.Va. 211, 212, 283 S.E. 914 (1981), which states:

> It is the mandatory duty of the trial court, whether requested or not, to hear the evidence and determine in the first instance, out of the presence of the jury, the voluntariness of an oral or written confession by an accused person prior to admitting the same into evidence, and the failure to observe this procedure constitutes reversible error.

Syl. Pt. 1, *Fortner*. However, the holding in *Fortner* must be placed in its proper context. The decision in *Fortner* was rendered prior to our adoption of Rule 12 of the West Virginia Rules of Criminal Procedure in 1981. *Fortner* created a prophylactic procedure to protect the rights of defendants from coerced confessions at a time when no criminal procedures existed. With the adoption of these procedural rules, and Rule 12 in particular, we put a system in place to protect the rights of defendants in all aspects of criminal proceedings. Nevertheless, even though beginning in 1981 Rule 12 specifically addressed and controlled the issue of determining the voluntariness of an inculpatory statement, our cases continued to recognize the *Fortner* holding. *See, e.g., State v. Holpp*, No. 14-0758, 2015 WL 1740293, at *2 (W.Va. Apr. 13, 2015) (memorandum decision); *State v. Black*, 227 W.Va. 297, 304, 708 S.E.2d 491, 498 (2010); *State v. Haller*, 178 W.Va. 642, 644, 363 S.E.2d 719, 721 (1987); *State v. Gwinn*, 169 W.Va. 456, 462, 288 S.E.2d 533, 537 (1982).

16

In the final analysis, *Fortner* conflicts with Rule 12, and when there is a conflict between the rules of criminal procedure and a judicial opinion of this Court on that subject, Syllabus Point 5 of *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999), instructs as follows:

> The West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction; any statutory or common-law procedural rule that conflicts with these Rules is presumptively without force or effect.

*Id. See State v. Davis,* 178 W.Va. 87, 90, 357 S.E.2d 769, 772 (1987) (holding that W.Va. R. Crim. Pro. 7(c)(1) supersedes the provisions of W. Va. Code § 62-9-1 (1931), to the extent that the statute requires the indorsement of the grand jury foreman and attestation of the prosecutor on the reverse side of the indictment), *overruled on other grounds, State ex rel. R.L. v. Bedell,* 192 W.Va. 435, 452 S.E.2d 893 (1994); *Reed v. Wimmer*, 195 W. Va. 199, 205, 465 S.E.2d 199, 205 (1995) ("[T]o the extent our prior cases are inconsistent or incompatible with the West Virginia Rules of Evidence, they have been implicitly overruled by Rule 402."). In light of this holding in *Wallace*, we now hold that Syllabus Point 1 of *State v. Fortner*, 150 W. Va. 571, 148 S.E.2d 669 (1966), has been superseded by Rule 12 of the West Virginia Rules of Criminal Procedure and is of no force or effect.

17

Notably, our recognition that Rule 12 does not require the circuit court to conduct, sua sponte, a voluntariness hearing is consistent with federal law in general. For instance, in the federal courts, a district court need not conduct a voluntariness hearing unless the defendant objects to the admissibility of his or her statement. *Wainright v. Sykes*, 433 U.S. 72 (1977). In *Wainright*, the Supreme Court of the United States reversed an order in a federal habeas corpus proceeding in which the district court ordered that the state court conduct a voluntariness hearing regarding an inculpatory statement made by a defendant. The defendant argued that he was entitled to a voluntariness hearing despite his own failure to object to the admissibility of his statement prior to or at trial. Justice Rehnquist, writing the majority opinion for the Court, noted the "[l]anguage in subsequent decisions of this Court has reaffirmed the view that the Constitution does not require a voluntariness hearing absent some contemporaneous challenge to the use of the confession." *Id*. at 86. Moreover, the Fourth Circuit Court of Appeals has held that a district court did not abuse its discretion in concluding that the defendant was not entitled to a hearing on the voluntariness of an incriminating statement because he failed to raise the issue until the day of trial. *United States v. Wilson*, 895 F.2d 168, 173 (1990). The Fourth Circuit explained: "[c]ourts have never interpreted the statute's provisions [18 U.S.C. § 3501(1982) requiring pre-trial voluntariness determination] as imposing a duty on the district court *sua sponte* to raise the issue of voluntariness in the absence of a defendant's objections." *Wilson*, 895 F.2d

18

at 172-73 (internal citations omitted). The Fourth Circuit confirmed that the waiver also applied when raised for the first time on appeal:

> [Defendant] now contends that the circumstances surrounding the statement give rise to an inference of involuntariness. [Defendant] admits that his trial counsel did not file any motion to suppress the statement, but argues nevertheless that the trial court had an obligation to review the voluntariness of his statement *sua sponte* under *United States v. Powe*, 591 F.2d 833, 847 (D.C. Cir. 1978). This court has held, however, that the issue of voluntariness must be timely raised or it is thereafter waived. *United States v. Wilson*, 895 F.2d 168, 172-73 (4th Cir. 1990). Since the voluntariness issue was never raised until appeal, it is not properly before the court.

*United States v. Campbell*, 935 F. 2d 39, 43-44 (1991).

In the case at hand, Mr. Simmons argues that the admission of the first statement taken at RGH entitles him to an automatic remand because the circuit court did not, sua sponte, conduct a voluntariness hearing. However, while Mr. Simmons filed a motion to suppress generally objecting to the admission of "any statement made by the defendant," his counsel only argued to suppress the second statement at the hearing. He never asked to suppress the first statement. Moreover, when the prosecution moved to admit the first statement into evidence at trial, counsel for Mr. Simmons stated "[n]o objection." In addition, counsel for Mr. Simmons cross-examined Corporal Fisher once the circuit court admitted the first statement into evidence. This is not the conduct of a defendant who, along with his counsel, wished to challenge his first statement as involuntary.

19

Significantly, even after the circuit court read the jury verdict and at the hearing on the post-trial motions, counsel for Mr. Simmons still did not challenge the admission of the first statement into evidence. Based upon his failure to raise an objection as required by Rule 12(b)(3), we hold that Mr. Simmons waived his right to a voluntariness hearing on the admissibility of his first statement.

## B. *Prompt Presentment Rule*

Mr. Simmons argues that Deputy Williams took him to the Roane County Sheriff's Office and failed to timely present him to a magistrate for the primary purpose of obtaining an incriminatory statement. The State responds that the totality of the circumstances do not establish that any delay was for the primary purpose of obtaining a statement. The State further asserts that Deputy Williams performed good police work and any delays were related to transportation from the hospital and necessary booking, processing and preparation of the warrant to search the truck involved in the accident.

The prompt presentment rule is codified in West Virginia Code § 62-1-5(a)(1)(2014):

> An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence or as otherwise authorized by law, shall take the arrested person without unnecessary delay before a magistrate of the county where the arrest is made.

Correspondingly, Rule 5(a) also provides that:

*In general*. - An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest is made . . . .

W.Va. R. Crim. Pro. 5(a).

In providing guidance to the circuit courts as to whether an inculpatory statement should be suppressed due to a violation of the prompt presentment rule, we established in Syllabus Point 6 of *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982) that "[t]he delay in taking the defendant to a magistrate may be a critical factor where it appears that the primary purpose of the delay was to obtain a confession from the defendant." *Id.* at 121, 286 S.E.2d at 263. We emphasized in *Persinger* that the prompt presentment rule is "not subject to any precise time period." *Id.* at 135, 286 S.E.2d at 270. Rather, the policy behind the rule is "not so much on the length of the detention but whether the police were primarily using the delay in bringing the defendant before a magistrate to obtain a confession from him." *Id.* at 136, 286 S.E.2d at 270 (footnote omitted).

Shortly thereafter, we refined our holding in *Persinger* to emphasize that many factors in the particular circumstances of a case may apply when determining whether a violation of the prompt presentment rule occurred:

21

"The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant." Syllabus Point 6, *State v. Persinger,* [169] W.Va. [121], 286 S.E.2d 261 (1982), as amended.

Syl. Pt. 1, *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984).

Nevertheless, in *State v. McCartney*, 228 W.Va. 315, 719 S.E.2d 785 (2011), while we cited the principle established in *Persinger* and *Guthrie*, we noted that our prior decisions on numerous occasions have found that delays in taking the accused to the magistrate did *not* violate the prompt presentment rule. *Id.* at 325-26, 719 S.E.2d at 795-96. While holding that there was no violation of the prompt presentment rule, we took the opportunity to make this point by quoting *State v. DeWeese*, 213 W.Va. 339, 582 S.E.2d 786 (2003) as follows:

> *To be clear, merely detaining a defendant in jail under an arrest warrant for fifteen hours before taking him/her to a magistrate will not trigger a sanctionable violation of the prompt presentment rule.* A sanctionable violation occurs if the purpose for detaining the defendant is to conduct an interrogation to obtain an incriminating statement from the defendant about his or her involvement in the crime for which he or she was arrested.

*Id.* at 344 n.8, 582 S.E.2d at 791 n.8 (internal citations omitted) (emphasis added). Likewise, in *State v. Johnson*, 219 W.Va. 697, 639 S.E.2d 789 (2006), the defendant argued that the primary purpose for the delay in presenting him to the magistrate after his arrest on charges of first-degree robbery was to "obtain an incriminating statement." *Id.*

22

at 702, 639 S.E.2d at 794. Rejecting his argument, we explained, "Johnson has produced no evidence that the delay in his presentment was for the purpose of obtaining a statement, and *we can find no evidence of such a motive either.*" *Id.* at 703, 639 S.E.2d at 795 (emphasis added). Thus, we found no violation of the prompt presentment rule.

With respect to the length of a delay, the prompt presentment rule is triggered when the defendant is placed under arrest. Syl. Pt. 2, in part, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986). We also defined the scope of the length of a delay in *Humphrey* when we stated, "[u]nder our prompt presentment rule, the significant time period when an accused is in police custody is the time between the arrest . . . and the time a statement is obtained from the accused." *Id.* at 269, 351 S.E.2d at 617-18. In other words, the delay which *precedes* the confession is most critical because that is the window of opportunity for the police or the authorities to coerce or induce a confession. In *State v. Wickline*, 184 W.Va. 12, 399 S.E.2d 42 (1990), we explained:

> The delay between the time of the arrest or custodial interrogation and the giving of a confession is most critical for prompt presentment purposes because during this time period custodial confinement and interrogation can be used to attempt to produce a confession.

Syl. Pt. 4, *Wickline*. *See also, State v. Judy*, 179 W.Va. 734, 739, 372 S.E.2d 796, 801 (1988) (". . . the proper focus in prompt presentment cases is on delay which precedes a confession.").

23

Moreover, any delay in presentment after a statement is given does not render the confession inadmissible. Again, in *Humphrey,* we held that "[o]rdinarily the delay in taking an accused who is under arrest to a magistrate *after* a confession has been obtained from him does not vitiate the confession under our prompt presentment rule." Syl. Pt. 4, *Humphrey*. (emphasis added).

Within that critical period, however, we have identified a number of circumstances that are not part of the "delay" for purposes of determining if a violation of the prompt presentment rule occurred. For instance, time spent by police in certain activities such as transporting the defendant to the police headquarters or completing normal booking, processing and paperwork must not be included in the time frame of any "delay." *See State v. Rogers*, 231 W.Va. 205, 211, 744 S.E.2d 315, 321 (2013) (driving defendant to police barracks and normal booking procedure, including interview of suspect after arrested if willing to give statement not included in calculating "delay"); *State v. Newcomb*, 223 W.Va. 843, 866, 679 S.E.2d 675, 698 (2009) (being kept at scene "for legitimate law enforcement purposes" not included in calculating "delay"); *Wickline*, 184 W.Va. at 17, 399 S.E.2d at 47 (finding one hour drive from crime scene to police barracks not included in calculating "delay"); *State v. Whitt*, 184 W.Va. 340, 344, 400 S.E.2d 584, 588 (1990) (stating routine processing, side trip agreed to by defendant, and subsequent inventory of stolen property not included in calculating "delay"); *Judy,* 179 W.Va. at 739; 372 S.E.2d at 801 (holding one hour delay "attributable in substantial part

24

to transportation and to the performance of routine administrative procedures"). *See also,* *Persinger*, 169 W.Va. at 135, 286 S.E.2d at 270 (itemizing specific types of booking and administrative procedures for processing arrests).

In the case at hand, Deputy Williams placed Mr. Simmons under arrest at RGH and drove him from there to the Roane County Sheriff's Office. This occurred between 4:30 a.m. and 6:00 a.m. Deputy Williams testified at the suppression hearing and at trial that upon arrival he prepared the warrant to search the truck that drove into the building. He also stated that he did not talk to Mr. Simmons but kept an eye on him through a camera placed in the jail cell area. When finished with the paperwork, Deputy Williams took Mr. Simmons to the "kitchen/interrogation" room of the sheriff's office and proceeded with reading each line of the *Miranda* rights form to him, each of which Mr. Simmons separately initialed. This all occurred in the presence of Sergeant Hammick, according to the undisputed testimony. Deputy Williams then testified that all three signed the form. After Mr. Simmons waived his *Miranda* rights, Deputy Williams asked for a statement to which Mr. Simmons agreed by voluntarily giving a recorded statement.[6] The record reflects from Deputy Williams's testimony that this process started at about 7:30 a.m. on July 18, 2013, and did not take very long.

---

[6] Despite having raised the issue of voluntariness of his second statement at the suppression hearing, Mr. Simmons does not raise this assignment of error on appeal.

At that point, Deputy Williams fingerprinted Mr. Simmons, returned him to the cell and arranged to have him taken to a magistrate who usually returned to duty at around 8:30 a.m. Deputy Williams testified that he did not have an exact time but estimated that he presented Mr. Simmons to the magistrate between 8:00 a.m. and 10:00 a.m. on July 18, 2013.

Based upon the window of opportunity that Deputy Williams and Sergeant Hammick allegedly had to coerce or induce a confession from Mr. Simmons, the record reveals nothing to support a violation of the prompt presentment rule. Between 4:30 a.m., the earliest Deputy Williams gave as an arrival time at the sheriff's office, and shortly after 7:30 a.m., the latest Deputy Williams gave as the time for completion of the *Miranda* rights form and the recording of the second statement, is the critical time in the case at hand "to attempt to produce a confession." Syl. Pt. 4, in part, *Wickline.* From these three hours, we must exclude the time for travel from RGH to the sheriff's office, for the preparation of the search warrant, and other processing. Additionally, none of the time shortly after 7:30 a.m. until presentment to the magistrate is included in the "delay" time-frame. More importantly, Mr. Simmons provides no argument or evidence that persuades us to deviate from this general rule. *See* Syl. Pt. 4, *Humphrey* ("*Ordinarily* the delay in taking an accused who is under arrest to a magistrate *after* a confession has been obtained from him does not vitiate the confession under our prompt presentment rule.") (emphasis added).

26

With the minimal amount of time that must have remained, the record reflects that Deputy Williams observed Mr. Simmons via camera while he processed the necessary paperwork. Our review of the record does not reveal any other conduct or activity that suggests any motive or purpose to coerce or induce a confession from Mr. Simmons by Deputy Williams. Concurrently, Sergeant Hammick spent part of the relevant time conducting the search of the truck, but as to the time he was at the sheriff's office, the record does not contain any evidence of statements, conduct or motive on his part to coerce or induce Mr. Simmons into giving a confession.

The primary argument raised by Mr. Simmons is that Deputy Williams delayed presenting him to the magistrate to keep him in the holding cell to sober him up to give a statement. Deputy Williams's testimony from the suppression hearing was:

> Q. So your purpose for bringing him back to the sheriff's department, was to get a statement from him?
>
> A. To get a statement and to process. I mean, I don't know what I'd do with them other then take them to the sheriff's office to process.

Deputy Williams responded to this question after explaining his normal procedures for processing a suspect under arrest. In addition, Sergeant Hammick's testimony corroborated Deputy Williams's statements regarding the processing needed in the case: ". . . [Deputy Williams] wanted to do an interview with the suspected driver of the vehicle, and we did a search warrant as well." We find these statements regarding

27

interviewing a cooperative suspect uncharacteristic of a police officer determined to coerce a confession. Furthermore, Mr. Simmons did not contradict the statements of these police officers when he testified.

Our prior decisions raising a violation of the prompt presentment rule have drawn a clear distinction between appropriate police conduct in interviewing a suspect who wishes to give a voluntary statement and police conduct that reveals coercive or inappropriate means of obtaining a confession. In *Newcomb*, after we concluded that the police officers acted properly in holding the defendant at the crime scene for a reasonable time to secure the scene, we quoted, with agreement, the circuit court's response to the defendant's argument that the police violated the prompt presentment rule. The circuit court stated that "it certainly is well within his [Deputy Sutherland's] purview as an officer to try and take a statement after giving the Defendant his rights and giving him an opportunity to exercise those rights which the Defendant chose not to do." *Newcomb*, 223 W.Va. at 867, 679 S.E.2d at 699.

As we stated in *Persinger* and repeated in *Humphrey* and other cases, the primary purpose of the prompt presentment rule is to prohibit lengthy interrogations aimed at coercing or inducing a "confession" out of a suspect. In the circumstances of this particular case, there is no basis upon which to infer that Deputy Williams or Sergeant Hammick would have such motives. Furthermore, Deputy Williams testified

28

that while he did paperwork, he let Mr. Simmons rest, and he then read Mr. Simmons his *Miranda* rights and requested a statement in the presence of Sergeant Hammick. Mr. Simmons did not provide any testimony to the contrary on this point. The only evidence in the record is from the officers who flatly denied that they coerced Mr. Simmons or made any promises to him. We, therefore, find that the record is simply devoid of any evidence to support Mr. Simmons's argument that the circuit court erred in failing to suppress the second statement due to a violation of the prompt presentment rule.

## IV. CONCLUSION

For the reasons set forth above, we affirm the conviction and the July 21, 2015, Amended Order of the Circuit Court of Roane County.

Affirmed.