**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 18-0139** (Monongalia County 17-F-184)

**John Russell Skidmore,**
**Defendant Below, Petitioner**

**AND**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 18-0160** (Monongalia County 17-F-185)

**Gordon Wade Swiger,**
**Defendant Below, Petitioner**

**AND**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 18-0161** (Monongalia County 17-F-186)

**Nickolas Lee Velez,**
**Defendant Below, Petitioner**

**FILED**
**October 30, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioners John Russell Skidmore, Gordon Wade Swiger, and Nickolas Lee Velez appeal final sentencing orders entered by the Circuit Court of Monongalia County

following their conditional guilty pleas[1] to the offenses of burglary[2] and conspiracy.[3]  In these appeals, all three petitioners argue that the circuit court erred by denying their motions to suppress the evidence that was obtained by the police following an extra-jurisdictional traffic stop.  Petitioners Skidmore and Velez also assert that the circuit court erred by denying their motions to suppress the statements they made while in custody.  In response, the State maintains that the circuit court did not commit reversible error.[4]

This Court has considered the parties' briefs, oral arguments, and the appendix records.  Upon application of the standard of review and the pertinent authorities, we find no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the final sentencing orders of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 5, 2017, at approximately 9:32 p.m., Brett McIntyre ("the victim") called MECCA[5] 911 and reported that he was robbed at 7:25 p.m. that evening.  The robbery occurred at an apartment building located on Willey Street in Morgantown.  Initially, two police officers from the Morgantown Police Department were dispatched to the crime

---

[1]*See* W. Va. R. Crim. P. 11(a)(2) ("With the approval of the court and the consent of the state, a defendant may enter a conditional plea of guilty . . . reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion.").

[2]The petitioners were indicted on charges of robbery and conspiracy, but the State agreed to conditional guilty pleas to the offenses of burglary, a lesser-related offense of robbery, and conspiracy.

[3]Petitioner Skidmore appeals a January 26, 2018, order, and Petitioner Velez appeals a January 23, 2018 order, imposing identical consecutive prison sentences of one to fifteen years for burglary and one to five years for conspiracy, but deferring and suspending said sentences in favor of placement at the Anthony Correctional Center for Youthful Offenders for six months to two years.  Petitioner Swiger appeals a January 24, 2018, order that imposed consecutive prison sentences of one to fifteen years for burglary and one to five years for conspiracy but provided that the sentences could be served on home confinement in lieu of imprisonment.

[4]J. Michael Benninger, Esq., represented John Russell Skidmore in this matter. Ryan J. Umina, Esq., appeared on behalf of Gordon Wade Swiger, and J. Tyler Slavey, Esq., was the attorney for Nickolas Lee Velez.  The State was represented by Thomas T. Lampman, Esq. and Shannon Frederick Kiser, Esq.

[5]"MECCA" is the acronym for Monongalia Emergency Centralized Communications Agency.

scene. The victim stated that three masked white males wearing dark sweatshirts forced their way into his apartment and stole his cellphone and a jar of marihuana at gunpoint. Based upon the victim's description of the alleged perpetrators, a "be on the lookout" ("BOLO") call was issued at approximately 9:40 p.m. by MECCA 911 for "three white males wearing masks [and] wearing black sweatshirts. One male armed with a rifle involved in a burglary . . . [u]nknown direction of travel." After further investigation, a second BOLO was sent out indicating that the suspects were possibly traveling in a "white Audi A4 model."[6]

At approximately 10:45 p.m., Patrolman Aaron Huyett of the Granville Police Department observed a white Audi sedan with multiple occupants wearing dark clothing traveling on Dents Run Boulevard in the Town of Granville. Officer Huyett started following the vehicle, which left Granville and proceeded up an entrance ramp onto Interstate 79, southbound. Officer Huyett radioed for backup from his superior, Sergeant Joshua Slagle. Sergeant Slagle indicated that he was on the way and radioed for any available county unit to respond and for the Morgantown Police to be notified. Officer Huyett then initiated a stop of the vehicle using his siren and lights. The vehicle pulled to the side of the highway. At that point, Officer Huyett was between two and two and one-half miles outside his jurisdiction.

According to Officer Huyett, Officer Slagle arrived five seconds after the stop occurred. As Officer Huyett ordered the suspects to exit their vehicle, Officer Slagle provided cover. While the suspects were exiting the vehicle and being secured, a patrolman from the Star City Police Department arrived on the scene followed by two officers from the Monongalia County Sheriff's Department. The vehicle was owned and operated by Petitioner Skidmore. The other passengers included Petitioners Swiger and Velez.[7] While securing the petitioners, the officers asked if there were any firearms in the vehicle. Petitioner Skidmore stated that there was a black airsoft rifle in the trunk and a handgun under the passenger seat. Officer Huyett also observed a dark hat, a black bandana, a small baggie containing what appeared to be marihuana, and a thirty-round airsoft rifle magazine inside the vehicle in plain view. Officer Huyett did not attempt to secure the evidence. After the Morgantown Police arrived on the scene, they impounded the vehicle and

---

[6]The record shows that the police obtained the description of the vehicle by viewing video surveillance footage from cameras that were located on buildings near the crime scene. The police observed both the vehicle and the disguised perpetrators in the video footage.

[7]A fourth male was also in the car. He was transported to the police department along with the others, but he was released after questioning because the police determined that this individual was picked up in Granville by the petitioners after the offenses occurred and that he had no knowledge of the crimes.

subsequently obtained a search warrant.[8]  The petitioners were detained for questioning and transported to the Morgantown Police Station.

At the police station, the petitioners were placed in separate interrogation rooms and interviewed separately.  Petitioner Swiger gave a statement but did not offer any substantive information.  Petitioner Skidmore confessed to the robbery and stated that Petitioner Velez carried a firearm owned by Petitioner Swiger during the commission of the crime.  Petitioner Velez also confessed and provided details regarding what occurred. Thereafter, all three petitioners were arrested, processed, and arraigned by 9:00 a.m. the next morning.

On May 5, 2017, all three petitioners were indicted, and each was charged with one count of robbery and one count of conspiracy.  Thereafter, they filed motions to suppress the evidence obtained as a result of the stop of their vehicle, arguing that the stop was unlawful because Officer Huyett had acted outside his jurisdiction.  Petitioners Skidmore and Velez also filed motions to suppress the statements they made while in custody, contending that they were not fully informed of their constitutional rights and that the arresting officers delayed presenting them to a magistrate in order to obtain their confessions. Petitioner Skidmore also asserted that his statement was not voluntarily given because he was intoxicated. The circuit court held multiple hearings and ultimately denied the petitioners' motions.  Thereafter, the petitioners entered conditional guilty pleas to the offenses of burglary and conspiracy.  Following entry of their sentencing orders,[9] the petitioners filed separate appeals.  The State then moved to consolidate the appeals for purposes of argument and decision.  By order entered on October 4, 2018, this Court granted the State's motion.

In these appeals, the petitioners contend that the circuit court erred by denying their motions to suppress certain evidence.  In syllabus point one of *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996), this Court explained that

> [w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the

---

[8]When the vehicle was searched, the Morgantown Police recovered a blue and white star bandana, a Bersa .380 handgun, .380 Winchester ball ammunition, a Valken tactical battle machine airsoft rifle, a black magazine for an airsoft rifle, a jar of marihuana, and several cell phones.

[9]*See* note 3, *supra.*

4

witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

This Court further held in *Lacy* that "a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made." *Id.* at 107, 468 S.E.2d at 722, syl. pt. 2, in part. With this standard of review in mind, we consider the parties' arguments.

As their first assignment of error, all three petitioners contend that the circuit court erred by denying their motions to suppress the evidence obtained as a result of the stop of their vehicle by Officer Huyett. The petitioners argue that Officer Huyett made an unlawful investigatory stop of their vehicle because he was outside of his jurisdiction when he forced them to pull over to the side of the highway. This Court has held that

> [a] law enforcement officer acting outside of his or her territorial jurisdiction has the same authority to arrest as does a private citizen and may make an extraterritorial arrest under those circumstances in which a private citizen would be authorized to make an arrest.

Syl. Pt. 2, *State ex rel. State v. Gustke*, 205 W. Va. 72, 516 S.E.2d 283 (1999). In syllabus points fourteen and fifteen, respectively, of *State v. Horn*, 232 W. Va. 32, 750 S.E.2d 248 (2013), this Court further held:

> Under the common law, a private citizen is authorized to arrest another person who the private citizen believes has committed a felony.

> A police officer acting beyond his or her territorial jurisdiction retains power as a private citizen to make an arrest when a felony has been committed and the officer has reasonable grounds to believe the person arrested has committed the crime.

The petitioners assert that Officer Huyett did not have a factual or legal basis to objectively conclude that they had committed a felony when he stopped their vehicle. They contend that the evidence showed that Officer Huyett was not inside his vehicle when the first BOLO was transmitted. They argue that the second BOLO did not provide sufficient facts for Officer Huyett to conclude that a felony had occurred or that the occupants of the car had committed the crime because the description of the vehicle was too vague. The petitioners maintain that the stop was investigatory in nature, and because private citizens have no authority to make investigatory stops, all the evidence obtained therefrom must be

5

suppressed. In support of their argument they rely upon this Court's recognition in *Gutske* that "[t]he 'under color of office' doctrine prohibits a law enforcement officer [outside his jurisdiction and not in fresh pursuit] from using the indicia of his or her official position *to collect evidence that a private citizen would be unable to gather*." 205 W. Va. 81, 516 S.E.2d at 292.

Conversely, the State argues that Officer Huyett made a lawful felony stop based upon the information contained in the BOLO dispatches. The State contends that Officer Huyett had reasonable grounds to believe that the white Audi A4 sedan he observed was the same one identified in the second BOLO dispatch, which was involved in an armed robbery. Therefore, he followed the vehicle outside of his jurisdiction and waited until backup was available to effectuate the stop. The State reasons that Officer Huyett acted in accordance with the holdings in *Gutske* and *Horn*, and, therefore, the circuit court did not err by denying the petitioners' motions to suppress. We agree.

Contrary to the petitioners' assertions, the circuit court found that the evidence showed that when Officer Huyett stopped the petitioners' vehicle, he reasonably believed the occupants had committed a felony. At the suppression hearing, Officer Huyett testified as follows:

> I was observing traffic on Dense [sic] Run Boulevard at Riverside Apostolic Church. I was just observing normal traffic flow. While observing traffic flow, I saw a white sedan drive passed [sic] me with what looked like multiple occupants inside. I pulled out behind the white sedan and confirmed it was an Audi, called to dispatch to see what the previous BOLO was for. They confirmed it was for a white Audi A4. What was in front of me was a white Audi A4 and it had—the BOLO was for three occupants wearing dark colored clothing, and from what I could see, there was at least three occupants inside the vehicle.

> . . . .

> I pulled out from my location, followed the vehicle briefly, once I realized I was about to stop the vehicle that I suspected that it was the vehicle involved in the previous BOLO, I radioed for my sergeant, who was nearby, to come to my location. He started my way. When he did, he radioed for any available county unit to come that way and to notify Morgantown PD. I continued following the vehicle until there was enough—until he was close enough to where I felt comfortable to go ahead and initiate a stop on the vehicle.

6

. . . .

> When the vehicle stopped, I initiated what we call a
> felony traffic stop. There's a certain procedure that involved
> to do so . . . [b]ecause the BOLO that was issued was for a
> crime involving a firearm. It was an armed robbery that had
> potentially occurred. So I felt that the need for doing so was
> for officer safety.

Based upon Officer Huyett's testimony, the circuit court found that "[h]e followed and stopped the vehicle because it and the occupants matched the description in the BOLOs . . . [t]herefore, he had reasonable grounds to make the stop . . . Officer Huyett was justified in performing a 'felony stop[.]'" Elaborating further, the circuit court concluded that "the factual basis for Officer Huyett's stop in this case is as strong or stronger than that in *Gutske* and *Horn*." Having carefully reviewed the record, we find no clear error in the circuit court's factual findings and that the evidence is sufficient to support the circuit court's decision to deny the motion to suppress. Viewing the evidence in the light most favorable to the State, the circuit court did not err in concluding that Officer Huyett's actions fell within the parameters established by this Court in *Gutsk*e and *Horn*, which allow a police officer acting beyond his or her territorial jurisdiction to arrest a person the officer reasonably believes has committed a felony.[10] Accordingly, we find no merit to the petitioners' argument.

Petitioners Skidmore and Velez also argue that the circuit court erred by failing to suppress the statements they made while in custody. Specifically, they assert that the police officers violated the prompt presentment rule and used an inadequate statement of rights form to obtain their confessions. In addition, Petitioner Skidmore contends that his statement was not voluntary because he was intoxicated when he was interrogated.

With regard to promptly presenting an arrested person to a magistrate, West Virginia Code § 62-1-5(a)(1) (1997) provides:

> An officer making an arrest under a warrant issued upon
> a complaint, or any person making an arrest without a warrant
> for an offense committed in his presence or as otherwise
> authorized by law, shall take the arrested person without

---

[10]The circuit court made an alternative finding that application of *Gutske* and *Horn* was not necessary because Officer Huyett made the stop in the presence of the Monongalia County Sheriff's deputies who were within their territorial jurisdiction. We need not address this alternative finding having found that there was substantial evidence to support the circuit court's finding that Officer Huyett made a proper felony stop under *Gutske* and *Horn*.

unnecessary delay before a magistrate of the county where the arrest is made.

*See also* W. Va. R. Crim. Proc. 5(a) ("An officer making an arrest under a warrant issued under a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest was made."). This Court has held that

> "[t]he delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissable] where it appears that the primary purpose of the delay was to obtain a confession from the defendant." Syllabus Point 6, *State v. Persinger*, [169] W.Va. [121], 286 S.E.2d 261 (1982), as amended.

Syl. Pt. 1, *State v. Guthrie*, 173 W. Va. 290, 315 S.E.2d 397 (1984). In other words,

> "[o]ne of the primary purposes of a prompt presentment statute is to ensure that the police do not use the delay to extract a confession from a defendant through prolonged interrogation." *State v. Hutcheson*, 177 W.Va. 391, 394, 352 S.E.2d 143, 146 (1986). Thus, the focus is generally on the delay which precedes, and can therefore be used to induce, the confession. *State v. Judy*, 179 W.Va. 734, 372 S.E.2d 796 (1988); *State v. Hutcheson*, supra. As we stated in Syllabus Point 8 of *State v. Worley*, 179 W.Va. 403, 369 S.E.2d 706, cert. denied, 488 U.S. 895, 109 S.Ct. 236, 102 L.Ed.2d 226 (1988):
>
> "'Ordinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confession under our prompt presentment rule.' Syllabus Point 4, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986)."

*State v. Fortner*, 182 W. Va. 345, 352, 387 S.E.2d 812, 819 (1989).

Petitioners Skidmore and Velez argue that the prompt presentment rule was violated because there was probable cause for their arrest before they gave their statements. Essentially, they contend that the police had probable cause to make an arrest when they were stopped along the interstate and, rather than presenting them to the magistrate who

was available to sign the search warrant for the vehicle they occupied, the police delayed their initial appearances to obtain their confessions.

Arguing that there was no prompt presentment violation, the State notes that the petitioners were questioned approximately three hours after they were stopped by the police. During the time preceding the questioning, they were transported to the police station while the officers continued to investigate the armed robbery. The State also points out that at the beginning of the interviews, the petitioners promptly waived their right to remain silent by executing the waiver of rights form. Then, they immediately confessed their involvement in the crimes. The State reasons that the record simply does not demonstrate the type of coercion necessary for a prompt presentment violation. We agree.

This Court recently explained in *State v. Simmons* 239 W. Va. 515, 529, 801 S.E.2d 530, 544 (2017), that

> [o]ur prior decisions raising a violation of the prompt presentment rule have drawn a clear distinction between appropriate police conduct in interviewing a suspect who wishes to give a voluntary statement and police conduct that reveals coercive or inappropriate means of obtaining a confession.

During the suppression hearing, the police detective who questioned the petitioners testified that he interviewed them "to gather additional information to allow them to reveal the truth regarding their involvement in the robbery, if they chose to do so." The circuit court found the petitioners "voluntarily and freely chose to disclose" their involvement in the alleged offenses and that the delay between the petitioners' arrival at the police station and their presentment to the magistrate was not for the primary purpose of coercing a confession. Upon review of the record, we find that the evidence supports the circuit court's factual findings. Indeed, there is nothing suggesting that coercive or inappropriate conduct was used to obtain the petitioners' confessions. Accordingly, we find no merit to the petitioners' argument that the prompt presentment rule was violated.

Regarding the statement of rights form, Petitioners Skidmore and Velez argue that that they were not adequately informed of their "right" to the presence of an attorney during questioning. Specifically, the petitioners contend that because the form uses the word "may," it does not convey the "absolute right" to have an attorney present during questioning. Thus, they maintain that the form does not adequately advise of the rights afforded to an accused by *Miranda v. Arizona*, 384 U.S. 436 (1966).

Conversely, the State argues that the form unequivocally informed the petitioners of their right to an attorney as it expressly states that "[y]ou have the right to consult an attorney before any statement or answering any questions." The State points out that this

9

Court has previously considered a statement of rights form with more ambiguous language and found it to be sufficient. *See State v. Sugg*, 193 W. Va. 388, 399, 456 S.E.2d 469, 480 (1995) (finding waiver form stating "we have no way of giving you a lawyer, but one will be appointed for you if you wish, if and when you go to court" sufficient to inform defendant of his constitutional rights). Thus, the State maintains that the circuit court did not err in finding that the statement of rights form used by the Morgantown Police complies with *Miranda*. We agree.

The statement of rights form read in its entirety clearly informs an accused of his/her constitutional rights.[11] The circuit court did not err in finding that the form was adequate and did not provide a basis to suppress the petitioners' confessions. Accordingly, we find no merit to the petitioners' argument.

Finally, Petitioner Skidmore argues that his statement was not voluntary because he had consumed "multiple amounts of marihuana, enough to get high with" before he was taken into custody. According to Petitioner Skidmore, none of the police officers inquired as to whether he had consumed any alcohol, drugs, or marihuana. This Court has held that "[a] claim of intoxication may bear upon the voluntariness of a defendant's confession, but, unless the degree of intoxication is such that it is obvious that the defendant lacked the capacity to voluntarily and intelligently waive his rights, the confession will not be rendered inadmissible." Syl. Pt. 1, *State v. Hall*, 174 W. Va. 599, 328 S.E.2d 206 (1985).

The State maintains that the evidence does not support a finding that Petitioner Skidmore was too intoxicated to give a voluntary statement. The State notes that the only evidence Petitioner Skidmore produced to support his intoxication claim was his own self-

---

[11] The statement of rights form provided, in relevant part:

Your Rights:

1.  You have the right to remain silent.
2.  Anything you say can and will be used against you in a court of law.
3.  You have the right to consult an attorney before any statement or answering any questions. You may have him present while you are being questioned.
4.  If you cannot afford to hire an attorney, one will be appointed to represent you before any questioning or statement, if you wish one.
5.  If you decide to answer the questions now, with or without an attorney, you still have the right to stop the questioning at any time for the purpose of consulting an attorney.

serving testimony. In contrast, Officer Huyett testified that if he had noticed the odor of marihuana on Petitioner Skidmore at the time of the stop, he would have made a note in his report, which he did not. The circuit court watched the video-recorded interview and found Petitioner Skidmore to be "coherent and competent throughout the questioning." Upon review of the record, the circuit court's findings with respect to Petitioner's Skidmore's claim of intoxication are supported by the evidence and sufficiently justify the circuit court's conclusion that the statement made by Petitioner Skidmore was not involuntary. Accordingly, we find no merit to this assignment of error.[12]

Based on all the above, the final orders of the Circuit Court of Monongalia County entered on January 23, 2018, January 24, 2018, and January 26, 2018, are affirmed.

Affirmed.

**ISSUED:** October 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[12]In his petition for appeal, Petitioner Skidmore also asserted that his confession was coerced by a promise of leniency made by the police detective who questioned him. However, the record shows that not only did Petitioner Skidmore fail to present this argument to the circuit court, it was not noted as an issue preserved for appeal in the plea agreement. Therefore, we decline to address it. *See State v. Sites*, 241 W. Va. 430, 438-39, 825 S.E.2d 758, 766-67 (2019) (explaining that issues not preserved for appellate review are waived); *State v. Legg*, 207 W. Va. 686, 690 n.7, 536 S.E.2d 110, 114 n.7 (2000) (observing that under W. Va. R. Crim. P. 11(a)(2) conditional guilty plea preserves for appeal any *specified* pretrial motion).